NUMBER 13-01-106-CV

 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI

 

____________________________________________________________________ 



IN RE VALLE REDONDO, S.A. DE C.V.,

 CONFRUTTA, S.A., AND

 JUGOS DE HERMOSILLO, S.A. DE C.V., Relators. 

____________________________________________________________________ 



On petition for writ of mandamus.

 ____________________________________________________________________ 



O P I N I O N

 

Before Chief Justice Valdez and Justices Hinojosa and Rodriguez 

Opinion by Justice Hinojosa

 

 Relators, Valle Redondo, S.A. de C.V., Confrutta, S.A., and Jugos De Hermosillo, S.A. de C.V. (collectively "the Cettos"),
seek a writ of mandamus from this Court directing the Respondent, the Honorable Leticia Hinojosa, presiding judge of the
139th District Court of Hidalgo County, Texas, to sign an order in Cause No. C-2012-99-C compelling arbitration and
staying the suit as to the signatories of an arbitration agreement pending the termination and outcome of the arbitration
process. 

 The underlying action is a suit by Americana Juice Imports, Inc. ("Americana") against NestleUSA, Inc. and Nestle USA
Beverage Division, Inc. (collectively "Nestle") complaining of Nestle's alleged tortious interference with Americana's
exclusive contractual relationship with the Cettos. Americana's claims include allegations that Americana provided the
Cettos with trade secrets regarding the production of grape juice and that Nestle misappropriated Americana's trade secrets
when Nestle purchased grape juice directly from the Cettos. 

 Mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy by appeal. See Mitchell
Energy Corp. v. Ashworth, 943 S.W.2d 436, 437 (Tex. 1997); Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). A trial
court abuses its discretion when it does not follow guiding rules and principles and reaches an arbitrary and unreasonable
decision. Walker, 827 S.W.2d at 839;Republic Royalty Co. v. Evins, 931 S.W.2d 338, 342 (Tex. App.--Corpus Christi
1996) (orig. proceeding). Mandamus is the appropriate remedy when the trial court improperly denies a motion to compel
arbitration pursuant to the Federal Arbitration Act.(1) In re L&L Kempwood Assocs., L.L.P., 9 S.W.3d 125, 128 (Tex. 1999)
(per curiam); In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 574-75 (Tex. 1999) (per curiam); EZ Pawn Corp. v.
Mancias, 934 S.W.2d 87, 88 (Tex. 1996). 

A. Background

 The Cettos are Mexican companies that produce grape and other fruit juices in Mexico and sell the juice in international
commerce. From 1989 to 1998, the Cettos exported grape juice to Americana in the United States. The Cettos ceased
doing business with Americana in 1998, and began selling grape juice directly to Nestle. Nestle's purchase agreement with
the Cettos required the Cettos to indemnify Nestle for any intellectual property infringement claims. Americana sued the
Cettos in federal court on November 17, 1998, for breaching their alleged exclusive distribution agreements by selling
grape juice directly to Nestle. The suit was settled in April 1999 ("the Settling Action"). As part of the settlement
agreement, Americana and the Cettos agreed to submit to arbitration any and all disputes and controversies related to the
facts at issue in the suit. 

 In April 1999, Americana filed suit against Nestle complaining of Nestle's alleged tortious interference with Americana's
exclusive relationship with the Cettos. In June 2000, Americana filed its Third Amended Petition against Nestle and
Border Environmental Laboratory, Inc. ("Border") for: 

misappropriation of Americana's trade secret juice blends by either (i) purchasing the primary ingredients for the juice
blends from Americana's most important juice suppliers in order to manufacture the juice blends itself or (ii) inducing the
supplier of Americana's primary juice blend ingredient to violate its confidential relationship with Americana in order to
directly obtain Americana's trade secret juice blends manufactured using Americana's trade secret processes. 



After being advised by Nestle that it would be filing a Third Party Petition against them, the Cettos commenced an
arbitration action against Americana in December 2000, to preclude Americana from continuing to assert the trade secret
infringement and tortious interference claims against Nestle. In the arbitration, the Cettos invoked the release in the
Settling Action that precludes Americana from asserting all claims and causes of action related to the production and sale
of grape juice. On January 5, 2001, Nestle filed a Third Party Petition against the Cettos. The petition seeks breach of
warranty damages, indemnity damages, and declaratory relief against the Cettos with respect to Americana's tortious
interference and trade secret infringement claims. On January 12, 2001, the Cettos filed a Motion to Compel Arbitration,
Plea in Abatement, and Motion for Stay in the 139th District Court of Hidalgo County, Texas. At the hearing on the
motions, the Cettos argued that although Nestle was not specifically named in the arbitration agreement of the Settling
Action, the trial court must order Americana and the Cettos to arbitration to determine whether Americana is precluded
from asserting the trade secret claims against Nestle based upon the release in the Settlement Agreement. On January 18,
2001, the district court denied the motion to stay the underlying lawsuit, plea in abatement, and the motion to compel
arbitration. The court announced that it would not interrupt the arbitration commenced in December 2000 between the
Cettos and Americana, but it would not "[throw] this whole case into arbitration." The Cettos now petition this Court for
mandamus relief from the district court's decision, arguing that arbitration should be compelled and the suit below stayed
under the Federal Arbitration Act ("FAA"). 

B. Texas Arbitration Act

 Americana contends this Court lacks jurisdiction over the trial court's order denying the Cettos's application to compel
arbitration and stay the underlying proceedings because the settlement agreement is governed by the Texas General
Arbitration Act ("TGAA"), and mandamus is not an appropriate remedy under the TGAA. See Tex. Civ. Prac. & Rem.
Code Ann. §§ 171.001, 171.098 (Vernon Supp. 2001). A trial court's order denying a motion to compel arbitration under
the TGAA is subject to interlocutory appeal. Id. 

 Americana asserts the "Settlement Agreement between Americana and Relators designates Texas law as the governing
law." It argues that "when parties to a contract choose Texas law to govern a contract that includes an arbitration provision,
then the Texas General Arbitration Act (TGAA) applies to any subsequent arbitration, not the Federal Act." In support of
its argument, Americana cites this Court's decision in D. Wilson Constr. Co. v. Cris Equip. Co., Inc., 988 S.W.2d 388 (Tex.
App.--Corpus Christi 1999, orig. proceeding). 

 The settlement agreement provides, in relevant part, as follows: 




IV.

Release

 A. Release by Americana 

 

 In consideration of the mutual promises and obligations contained herein, Americana, on its own behalf and on behalf of
its assigns, agents, beneficiaries and successors in interest, hereby expressly agrees not to, now or hereafter, individually or
collectively, institute, maintain or assert, against Defendants, individually or collectively, or any of their past, present, and
future officers, directors, employees, general agents, agents, sub-agents, brokers, representatives, attorneys, insurers,
subsidiaries or affiliates, including past, present, and future officers, directors, and employees of any such person or
companies (collectively "Americana's Releasees"), either directly or indirectly, on its own behalf or on behalf of any other
person or entity, and hereby forever releases and discharges Americana's Releasees from, any and all of Americana's
Claims, based on, connected with, arising out of, or related in whole or in part to: (i) any or all of the acts, omissions, facts,
matters, transactions or occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in
the Settling Action, (ii) the solicitation, purchase, delivery, supply, distribution, or sales, prior to the effective date of this
Settlement Agreement, of any products by Defendants, collectively or individually, (iii) all transactions, recommendations,
services, acts, representations, omissions, and occurrences whatsoever of Defendants and Americana's Releasees,
individually or collectively, up to and including the date of this instrument, and/or (iv) any and all acts, omissions, facts,
matters, transactions, occurrences or representations relating to the Settlement Agreement (collectively "Americana's
Released Transactions"). 

 

 Americana's release covers, without limitation, any and all claims for attorney's fees, costs, expenses or disbursements
incurred by Americana or its counsel in connection with or related in any manner to the Settling Action, the settlement of
said action, and the Settlement Agreement. This release shall be a fully binding and complete compromise and settlement
between Americana and Americana's Releasees, and their heirs, assigns, agents, beneficiaries and successors in interest. 
Nothing in Americana's release, however, shall preclude any action to enforce the terms of the Settlement Agreement. 

 

* * * * *

 XIV.

Governing Law, Dispute Resolution, And Venue


 The Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Texas,
without reference to the conflicts of law rules of the State of Texas. At the sole and exclusive election of Defendants,
any enforcement action, dispute, controversy or claim arising out of or related to the Settlement Agreement or the
Settling Action shall be submitted to arbitration administered by the American Arbitration Association under its
Commercial Arbitration Rules. Should Defendants elect to proceed with arbitration, the parties agree (i) to faithfully
observe this arbitration agreement and the Commercial Arbitration Rules, (ii) to abide by and perform any award rendered
by the arbitrator(s), (iii) that a judgment of any court having jurisdiction, in the United States or Mexico, may be entered on
any award, and (iv) that the American Arbitration Association Optional Rules for Emergency Measures of Protection shall
apply to any proceeding. (Emphasis added). 



 It is true that our opinion in D. Wilson Constr. states, "because the parties agreed the laws of Texas govern the contract,
i.e., the laws of the place where the project is located, we hold the TGAA applies." However, when we handed down our
opinion in D. Wilson Constr. we did not have the benefit of the Texas Supreme Court's opinion in L&L Kempwood, which
was handed down nine months after D. Wilson Constr. In L&L Kempwood, the supreme court discussed the respondent's
contention that the TGAA applied. The supreme court stated: 

 Omega also argues that by contracting to be governed by "the law of the place where the Project is located", they intended
that only the Texas Arbitration Act apply and not the Federal Arbitration Act. But Houston, where the apartment
renovation project was located, is subject to federal law as well as Texas law. The choice-of-law provision did not
specifically exclude the application of federal law and absent such an exclusion we decline to read the choice-of-law clause
as having such an effect. 

 

L&L Kempwood, 9 S.W.3d at 127-28; see also Capital Income Properties-LXXX v. Blackmon, 843 S.W.2d 22, 23 (Tex.
1992) (the FAA is part of the substantive law of Texas). Accordingly, we conclude the provision in this case requiring that
the "Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Texas" does not
preclude the application of the FAA.(2)

C. Federal Arbitration Act

 The FAA "applies to all suits in state or federal court when the dispute concerns 'a contract evidencing a transaction
involving commerce.'" Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 269-70 (Tex. 1992) (quoting from 9 U.S.C.S. § 2); In
re Profanchik and Conversant Tech., Inc., 31 S.W.3d 381, 384 (Tex. App.--Corpus Christi 2000, orig. proceeding). A
written arbitration provision in a contract evidencing a transaction involving commerce extends to any contract affecting
commerce, as far as the Commerce Clause of the United States Constitution will reach. Allied-Bruce Terminix Cos. v.
Dobson, 513 U.S. 265, 268 (1995); L&L Kempwood, 9 S.W.3d at 127. The transaction must in fact involve interstate
commerce. Allied-Bruce Terminix, 513 U.S. at 281. 

 The issue is not whether the parties' dispute affects interstate commerce, but whether their dispute concerns a transaction
that affects interstate commerce. See Anglin, 842 S.W.2d at 272; In re Education Management Corp., 14 S.W.3d 418, 423
(Tex. App.--Houston [14th Dist.] 2000, orig. proceeding). The FAA does not require a substantial effect on interstate
commerce; rather, it requires only that commerce be involved or affected. L&L Kempwood, 9 S.W.3d at 127. 

 There is a presumption favoring agreements to arbitrate under the federal act. Cantella & Co. v. Goodwin, 924 S.W.2d
943, 944 (Tex. 1996). A party seeking to compel arbitration must present sufficient evidence to establish its right to
arbitrate under the act. Id.; see EZ Pawn Corp., 934 S.W.2d at 91. If it does, and the opposing party does not defeat that
right, the trial court is obliged to compel arbitration. Cantella, 924 S.W.2d at 944. 

 When, as here, there is no express agreement to arbitrate under the federal act, the question of whether the parties'
transaction affects interstate commerce is one of fact. Stewart Title Guaranty Co. v. Mack, 945 S.W.2d 330, 332 (Tex.
App.--Houston [1st Dist.] 1997, writ dism'd w.o.j.). Because arbitration should proceed summarily when it is appropriate,
a "full evidentiary hearing" is not required unless material facts are controverted. In re MHI Partnership, 7 S.W.3d 918,
922 (Tex. App.--Houston [1st Dist.] 1999, orig. proceeding). A party who alleges interstate commerce may show it in a
variety of ways: (1) location of headquarters in another state; (2) transportation of materials across state lines; (3)
manufacture of parts in a different state; (4) billings prepared out of state; and (5) interstate mail and phone calls in support
of a contract. See Anglin, 842 S.W.2d at 270; Stewart Title Guaranty Co., 945 S.W.2d at 332. 

 The very basis of the conflict in the underlying suit involves juice exported by the Cettos from Mexico to Americana or
Nestle in the United States. Thus, the dispute concerns a transaction involving interstate commerce. We conclude this
suffices to establish the applicability of the FAA. 

D. Arbitrable Claims

 When a party asserts a right to arbitration under the federal act, the question of whether a dispute is subject to arbitration
is determined under federal law. See Prudential Secs., Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995). Under federal
law, whether a claim falls within the scope of an arbitration agreement depends on the factual allegations of the complaint,
rather than the legal cause of action asserted. See id.; see also Ikon Office Solutions, Inc. v. Eifert, 2 S.W.3d 688, 697 (Tex.
App.--Houston [14th Dist.] 1999, orig. proceeding); Prudential-Bache Secs., Inc. v. Garza, 848 S.W.2d 803, 807 (Tex.
App.--Corpus Christi 1993, orig. proceeding). 

 Generally, if the facts alleged "touch matters," have a "significant relationship" to, are "inextricably enmeshed" with, or are
"factually intertwined" with the contract that is subject to the arbitration agreement, the claim will be arbitrable. See
Pennzoil Co. v. Arnold Oil Co., 30 S.W.3d 494, 498 (Tex. App.--San Antonio 2000, orig. proceeding) (citing Hou-Scape
Inc. v. Lloyd, 945 S.W.2d 202, 205-06 (Tex. App.--Houston [1st Dist.] 1997, orig. proceeding)). However, if the facts
alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained
without reference to the contract, the claim is not subject to arbitration. See Fridl v. Cook, 908 S.W.2d 507, 511 (Tex.
App.--El Paso 1995, writ dism'd w.o.j.). 

 Any doubts as to whether a claim falls within the scope of the agreement must be resolved in favor of arbitration. See
Prudential Secs., Inc., 909 S.W.2d at 899. The federal policy in favor of enforcing arbitration agreements is so compelling
that a court should not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not
susceptible of an interpretation which would cover the dispute in issue. Id. In determining whether the claim falls within
an arbitration clause, a court focuses on the facts alleged, not on the causes of action asserted. Id.; Hou-Scape, Inc., 945
S.W.2d at 205. 

 Americana contends that it "cannot be compelled to arbitrate its lawsuit against Nestle because it never agreed to arbitrate
any claims against Nestle," and "only the parties to the Settlement Agreement may receive the benefits and obligations of
the arbitration clause contained in the Settlement Agreement." While we agree that Americana cannot be compelled to
arbitrate its claims against Nestle, under the Settlement Agreement, Americana can be compelled to arbitrate any and all
disputes and controversies between it and the Cettos. 

 In the Settling Action, Americana alleged claims and sought damages for the alleged injuries caused by the Cettos's alleged
breach of contract, fraud, tortious interference with contractual relations, and conspiracy. The claims were brought because
the Cettos allegedly sold grape juice directly to Nestle. The settlement agreement recites that "Americana commenced the
Settling Action against [the Cettos] seeking enforcement of an alleged exclusive grape juice agreement." 

 Americana filed the underlying suit against Nestle complaining of Nestle's alleged tortious interference with Americana's
exclusive relationship with the Cettos. Specifically, the petition alleges that Nestle tortiously interfered by purchasing the
primary ingredients for the juice blends from Americana's most important juice suppliers in order to manufacture the juice
blends itself, or inducing the supplier of Americana's primary juice blend ingredient to violate its confidential relationship
with Americana in order to directly obtain Americana's trade secret juice blends manufactured using Americana's trade
secret processes. 

 We conclude that the facts alleged have a significant relationship with the settlement agreement and are factually
intertwined with that agreement. Thus, we hold the Cettos's claims against Americana are arbitrable under the FAA. 

 

E. Conclusion

 A party denied the right to arbitrate under the Federal Arbitration Act by a state court has no adequate remedy by appeal
and is entitled to mandamus relief to correct a clear abuse of discretion. L&L Kempwood, 9 S.W.3d at 128. 

 We hold the district court clearly abused its discretion by ordering that the parties' disputes be resolved by litigation and
not stayed during the pending arbitration. Accordingly, we conditionally grant the mandamus relief requested by relators. 

 The district court is directed: (1) to vacate its order denying the motion to compel arbitration and stay the underlying
proceedings, and (2) to issue an order compelling arbitration and staying the underlying lawsuit(3) until the arbitration is
completed. We are confident that the district court will comply promptly. The writ will issue only if that confidence
proves misplaced. 





FEDERICO G. HINOJOSA 

Justice 





Publish. Tex. R. App. P. 47.3. 



Opinion delivered and filed this 

12th day of April, 2001. 

1. 9 U.S.C.S. § 2 (2000) (enforcement of agreements to arbitrate).

2. We note that the Cettos have not filed an interlocutory appeal alleging they are entitled to arbitration under the TGAA. 
When a party seeks to compel arbitration under both the TGAA and the FAA, they must pursue parallel proceedings: an
interlocutory appeal of the order denying arbitration under the Texas act, and a writ of mandamus from denial under the
Federal Act. Jack B. Anglin Co, Inc. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992); Pennzoil Co. v. Arnold Oil Co., 30
S.W.3d 494, 497 (Tex. App.--San Antonio 2000, orig. proceeding).

3. See 9 U.S.C.S. §3 (2000) (stay of proceedings where issue referable to arbitration).