In re: Nestle USA & Valle Redondo









COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


Number 13-02-00227-CV



IN RE NESTLE USA - BEVERAGE DIVISION, INC.

 AND NESTLE USA, INC., Relators.

 


Number 13-02-00259-CV



IN RE VALLE REDONDO, S.A. de C.V.,

 CONFRUTTA, S.A., AND JUGOS DE

 HERMOSILLO, S.A. de C.V., Relators.

 


On Relators' Petitions for Writ of Mandamus.


 


O P I N I O N



Before Justices Hinojosa, Yañez, and Castillo


Opinion by Justice Hinojosa



 Relators, Nestle USA - Beverage Division, Inc. and Nestle USA, Inc. (collectively
"Nestle"), have filed a petition for writ of mandamus in cause number 13-02-227-CV,
requesting that this Court direct respondent, the Honorable Leticia Hinojosa, presiding
judge of the 139th District Court of Hidalgo County: (1) to dismiss the trade secret
infringement and tortious interference claims of the real party in interest, Americana Juice
Imports, Inc. ("Americana"), in cause no. C-2012-99-C, or in the alternative, to grant the
motion to compel further arbitration of Valle Redondo, S.A. de C.V., Confrutta, S.A. and
Jugos de Hermosillo, S.A. de C.V. (collectively "the Cettos"), and (2) to vacate the June 3,
2002 trial date in said cause.

 Relators, the Cettos, have filed a petition for writ of mandamus in cause number 13-02-259-CV, requesting that this Court direct respondent: (1) to vacate her April 22, 2002
order in cause number C-2012-99-C, which provides that "the issue of whether the claims
set out by Nestle in its Third Party Petition against the Cettos are covered by the Indemnity
Agreement involves questions of fact that must be determined by a Jury and are therefore
reserved for trial," and (2) to compel arbitration to adjudicate Americana's declaratory
judgment action and the Cettos's cross-claims. 

A. Standard of Review


 Mandamus will issue only to correct a clear abuse of discretion when there is no
adequate remedy by appeal. See Mitchell Energy Corp. v. Ashworth, 943 S.W.2d 436, 437
(Tex. 1997); Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). A trial court abuses its
discretion when it does not follow guiding rules and principles and reaches an arbitrary and
unreasonable decision. Walker, 827 S.W.2d at 839; Republic Royalty Co. v. Evins, 931
S.W.2d 338, 342 (Tex. App.--Corpus Christi 1996, orig. proceeding). Likewise, a trial
court abuses its discretion in the following ways: (1) when it attempts to exercise a power
that it does not legally possess; (2) if it declines to exercise a power of discretion vested
in it by law when the circumstances require that the power be exercised; (3) if it purports
to exercise its discretion without sufficient information upon which a rational decision may
be made; and (4) if it exercises its power of discretion by making an erroneous choice as
a matter of law in the following ways: (i) by making a choice that is not within the range of
choices permitted by law, (ii) by arriving at its choice in violation of an applicable legal rule,
principle, or criterion, or (iii) by making a choice that is legally unreasonable in the factual-legal context in which it is made. See Koch v. Koch, 27 S.W.3d 93, 95 (Tex. App.-San
Antonio 2000, no pet.) (citing Landon v. Jean-Paul Budinger, Inc., 724 S.W.2d 931, 937-40
(Tex. App.-Austin 1987, no writ)). Mandamus is the appropriate remedy when the trial
court improperly denies a motion to compel arbitration pursuant to the Federal Arbitration
Act. (1) In re L&L Kempwood Assocs., L.L.P., 9 S.W.3d 125, 128 (Tex. 1999) (per curiam);
In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 574-75 (Tex. 1999) (per curiam); EZ
Pawn Corp. v. Mancias, 934 S.W.2d 87, 88 (Tex. 1996). 

B. Background


 The Cettos are Mexican companies which produce grape and other fruit juices in
Mexico and sell the juice in international commerce. From 1989 to 1998, the Cettos
exported grape juice to Americana in the United States. The Cettos ceased doing
business with Americana in 1998, and began selling grape juice directly to Nestle. 
Americana filed suit against the Cettos in federal court on November 17, 1998, for
breaching their alleged exclusive distribution agreements by selling grape juice directly to
Nestle. The suit was settled in April 1999 ("the Settling Action"). As part of the settlement,
Americana and the Cettos agreed to submit to arbitration any and all disputes and
controversies related to the facts at issue in the suit. 

 In April 1999, Americana filed suit against Nestle complaining of Nestle's alleged
tortious interference with Americana's exclusive relationship with the Cettos. In June 2000,
Americana filed its Third Amended Petition against Nestle and Border Environmental
Laboratory, Inc. ("Border") for "misappropriation of Americana's trade secret juice blends
by either (i) purchasing the primary ingredients for the juice blends from Americana's most
important juice suppliers in order to manufacture the juice blends itself or (ii) inducing the
supplier of Americana's primary juice blend ingredient to violate its confidential relationship
with Americana in order to directly obtain Americana's trade secret juice blends
manufactured using Americana's trade secret processes."

 In December 2000, the Cettos commenced an arbitration action against Americana
to preclude Americana from continuing to assert the trade secret infringement claims. On
January 5, 2001, Nestle filed a Third Party Petition against the Cettos. The petition sought
breach of warranty damages, indemnity damages, and declaratory relief against the Cettos
with respect to Americana's tortious interference and trade secret infringement claims. On
January 12, 2001, the Cettos filed a Motion to Compel Arbitration, Plea in Abatement, and
Motion for Stay in the 139th District Court. On January 18, 2001, the district court denied
the motion to stay the underlying lawsuit, plea in abatement, and the motion to compel
arbitration. The court also announced that it would not interrupt the arbitration between the
Cettos and Americana, but it would not "[throw] this whole case into arbitration." 

 In February 2001, the Cettos asked this Court for a writ of mandamus directing the
respondent to sign an order in cause number C-2012-99-C, compelling arbitration and
staying the suit as to the signatories of an arbitration agreement, pending the termination
and outcome of the arbitration process. In our April 12, 2001 opinion, we applied the
Federal Arbitration Act and stated: 

 In the Settling Action, Americana alleged claims and sought damages
for the alleged injuries caused by the Cettos's alleged breach of contract,
fraud, tortious interference with contractual relations, and conspiracy. The
claims were brought because the Cettos allegedly sold grape juice directly
to Nestle. The settlement agreement recites that "Americana commenced
the Settling Action against [the Cettos] seeking enforcement of an alleged
exclusive grape juice agreement." 

 

 Americana filed the underlying suit against Nestle complaining of
Nestle's alleged tortious interference with Americana's exclusive relationship
with the Cettos. Specifically, the petition alleges that Nestle tortiously
interfered by purchasing the primary ingredients for the juice blends from
Americana's most important juice suppliers in order to manufacture the juice
blends itself, or inducing the supplier of Americana's primary juice blend
ingredient to violate its confidential relationship with Americana in order to
directly obtain Americana's trade secret juice blends manufactured using
Americana's trade secret processes. 


 We conclude that the facts alleged have a significant relationship with
the settlement agreement and are factually intertwined with that agreement. 
Thus, we hold the Cettos's claims against Americana are arbitrable under the
FAA.


In re Valle Redondo, S.A. de C.V., 47 S.W.3d 655, 663 (Tex. App.-Corpus Christi 2001,
orig. proceeding). We further held that "the district court clearly abused its discretion by
ordering the parties' disputes be resolved by litigation and not stayed during the pending
arbitration," and we directed the trial court to "issue an order compelling arbitration and
staying the underlying lawsuit until the arbitration is completed." Id.

 The Cettos then submitted to arbitration their claims against Americana to enforce
the terms of the settlement agreement and to construe the terms of the agreement as
applicable to claims asserted by Americana against Nestle and Nestle against the Cettos. 
In the arbitral award entered on August 29, 2001, the arbitrator found:

* * * * *




 In January 1999, prior to the execution of the Agreement, Americana
became aware of the October 12, 1998 Purchase Order WETB
700348 ("Purchase Order") entered into between Cettos and Nestle
USA - Beverage Division, Inc. and the contractual indemnity provision
contained therein regarding the sale by Cettos to Nestle prior to the
effective date of the Agreement. In negotiations leading up to the
execution of the Agreement, Cettos requested the addition of an
indemnity provision from Americana in favor of Cettos, but such
provision was specifically refused by Americana. 

 Immediately following execution of the Agreement, Americana
initiated suit against Nestle in Cause No. C-2012-99-C, Americana
Juice Imports, Inc. vs. Nestle USA - Beverage Division, Inc., et. al. In
the 139th District Court of Hidalgo County, Texas. The suit was
based in part on causes of action arising out of the course of dealings
between Nestle and Cettos prior to the effective date of the
Agreement.

 It was the decision of the emergency arbitrator, the Honorable Chuck
Miller, that Americana had indeed indirectly, through Nestle, asserted
claims against Cettos as prohibited by the Agreement.

 Americana's suit against Nestle is in part an indirect claim against
Cettos which is based on, connected with, arising out of, or related in
whole or in part to the matters referenced in Paragraph IV of the
Agreement, and as such is a claim prohibited by Paragraph IV of the
Agreement. (2)
 Americana is not prohibited by the language of the Agreement from
pursuing claims for alleged trade secret infringement, or pursuing any
other claims, against Nestle or any other party arising after the date
of the Agreement.

 To the extent claims asserted by Americana against Nestle in Cause
No. C-2012-99-C, Americana Juice Imports, Inc. vs. Nestle USA -
Beverage Division, Inc., et. al. In the 139th District Court of Hidalgo
County, Texas are claims that could result in the imposition of liability
and damages against Cettos by Nestle based on the Purchase Order,
Americana was aware of the indemnity provision in the Purchase 
Order and aware of potential damages that could indirectly result to
Cettos if Americana pursued those certain claims against Nestle as
described in the Purchase Order.


 

 I, the undersigned arbitrator, having been designated in accordance
with the Arbitration Clause contained in the Agreement entered into between
the above-named parties and having been duly sworn, and having duly
considered the evidence of the parties, do hereby, AWARD as follows:



 
 Americana's Motion for Summary Judgment is denied.

 Americana is barred from asserting those claims against
Nestle which could result in contractual indemnity from Cettos
to Nestle pursuant to the Purchase Order dated October 1998.

 Americana shall within thirty (30) days from the date of
transmittal of this Award to the Parties dismiss with prejudice
in the 1999 Action those claims asserted against Nestle which
could result in contractual indemnity from Cettos to Nestle
pursuant to the Purchase Order. Americana is barred from
refiling those claims in any other forum.

 


* * * * * 



 On September 11, 2001, the Cettos filed an Application for Confirmation of Arbitral
Award. In its Fifth Amended Petition, filed on September 18, 2001, Americana asked
respondent to declare that:

Nestle does not possess valid contractual indemnity claims against the Third
Party Defendants pursuant to the Indemnity Agreement (i) because the plain
language of the Indemnity Agreement only applies to acts perpetrated by the
Third Party Defendants, not acts by Nestle, (ii) because Nestle cannot seek
indemnity for its own intentional acts; (iii) because Nestle cannot seek
indemnity for its own criminal acts; and (iv) because the language of the
Indemnity Agreement is not conspicuous in violation of the Texas Business
and Commerce Code. Therefore, Americana requests that the Court declare
the rights and liabilities of the parties affected by the Indemnity Agreement
and declare that Nestle cannot seek contractual indemnity from Third Party
Defendants for Americana's trade secret claims against Nestle, and as a
consequence Americana does not have to dismiss any of its claims against
Nestle pursuant to the arbitral award. 


On September 24, 2001, Americana filed a Motion for Partial Summary Judgment Against
Nestle on Plaintiff's Declaratory Judgment Action requesting that the trial court:

declare the rights and liabilities of the parties affected by the Indemnity
Agreement and declare that the Indemnity Agreement is unenforceable and
that therefore Nestle cannot seek contractual indemnity from the Cettos for
Americana's trade secret claims against Nestle, and as a consequence
Americana does not have to dismiss any of its claims against Nestle
pursuant to the Award. 


On September 25, 2001, Americana filed a Motion to Vacate Arbitration Award because
"by the arbitrator's award, Americana has been thrown into a situation of indemnifying the
Cettos despite the fact that Americana and the Cettos explicitly agreed in the Settlement
Agreement that Americana would not indemnify the Cettos against claims by Nestle." 

 On November 5, 2001, the Cettos filed a Second Motion to Compel Arbitration, and
Second Motion for Stay. The Cettos asserted:

Americana has failed to withdraw its claims against Nestle that could result
in contractual indemnity from the Cetto Defendants to Nestle and has
continued to assert said claims in this Action. Furthermore, Americana is
trying to circumvent the arbitration proceeding already effectuated between
the Cetto Defendants and Americana by requesting a declaratory judgment
seeking to undermine the provision in the Americana-Cetto's Settlement
Agreement whereby Americana agreed "to abide by and perform any award
rendered by the arbitrator(s) . . . . " (3) 


On November 5, 2001, the Cettos also filed their First Supplemental Cross-Claims against
Americana, contending that the actions of Americana: 

in failing to abide by and perform any award of the arbitrator and seeking to
re-adjudicate the matters already adjudicated in the arbitration [are] a breach
of contract. As a result, the Cetto Defendants are entitled to and hereby
request specific performance of the terms of the Settlement Agreement and
all consequently [sic], incidental, and other damages, including attorney fees. 
Pursuant to Chapter 37 of the Texas Civil Practices [sic] and Remedies
Code, the Cetto Defendants request declaratory relief with respect to the
rights, status, and legal relations between Americana, Nestle, and/or the
Cetto Defendants regarding the matters described above. Specifically, the
Cetto Defendants request a declaration that Americana must abide by and
perform any award rendered by the arbitrator(s) and must refrain from
seeking to litigate in this action those matters that Americana could have
submitted for adjudication in the arbitration.

 

 Respondent confirmed the arbitral award on April 3, 2002. On the same day,
respondent heard Americana's motion for partial summary judgment. On April 22, 2002,
respondent determined that:


 There are contested issues of fact which preclude summary judgment
on Americana's Declaratory Judgment claim;

 The Indemnity Agreement contained in the Nestle Purchase Order
WETB 700348 dated October 12, 1998 . . . is enforceable;

 The issue of whether the claims set out by Nestle in its Third Party
Petition against the Cettos are covered by the Indemnity Agreement
involves questions of fact that must be determined by a Jury and are
therefore reserved for trial. 


 

Respondent set the case for trial on June 3, 2002.

 All proceedings in cause number C-2012-99-C were stayed by this Court. The real
party in interest filed a response in both cases, and this Court heard argument on May 13,
2002. See Tex. R. App. P. 52.4 

C. Federal Arbitration Act


 The FAA "applies to all suits in state or federal court when the dispute concerns 'a
contract evidencing a transaction involving commerce.'" Jack B. Anglin Co. v. Tipps, 842
S.W.2d 266, 269-70 (Tex. 1992) (quoting from 9 U.S.C.S. § 2); In re Profanchik, 31 S.W.3d
381, 384 (Tex. App.--Corpus Christi 2000, orig. proceeding). There is a presumption
favoring agreements to arbitrate under the federal act. Cantella & Co. v. Goodwin, 924
S.W.2d 943, 944 (Tex. 1996). A party seeking to compel arbitration must present sufficient
evidence to establish its right to arbitrate under the act. Id.; see EZ Pawn Corp., 934
S.W.2d at 91. If it does, and the opposing party does not defeat that right, the trial court
is obliged to compel arbitration. Cantella, 924 S.W.2d at 944.

 This Court previously determined that "the present dispute concerns a transaction
involving interstate commerce by the fact that the very basis of this conflict involves juice
exported from Mexico by the Cettos to Americana or Nestle in the United States." In re
Valle Redondo, 47 S.W.3d at 662. Accordingly, we concluded "that this suffices to
establish the applicability of the FAA." Id.

 When a party asserts a right to arbitration under the federal act, the question of
whether a dispute is subject to arbitration is determined under federal law. See Prudential
Secs., Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995). Under federal law, whether a
claim falls within the scope of an arbitration agreement depends on the factual allegations
of the complaint, rather than the legal cause of action asserted. See id.; see also Ikon
Office Solutions, Inc. v. Eifert, 2 S.W.3d 688, 697 (Tex. App.--Houston [14th Dist.] 1999,
orig. proceeding); Prudential-Bache Secs., Inc. v. Garza, 848 S.W.2d 803, 807 (Tex.
App.--Corpus Christi 1993, orig. proceeding).

 Generally, if the facts alleged "touch matters," have a "significant relationship" to,
are "inextricably enmeshed" with, or are "factually intertwined" with the contract that is
subject to the arbitration agreement, the claim will be arbitrable. See Pennzoil Co. v.
Arnold Oil Co., 30 S.W.3d 494, 498 (Tex. App.--San Antonio 2000, orig. proceeding)
(citing Hou-Scape, Inc. v. Lloyd, 945 S.W.2d 202, 205-06 (Tex. App.--Houston [1st Dist.]
1997, orig. proceeding)). However, if the facts alleged in support of the claim stand alone,
are completely independent of the contract, and the claim could be maintained without
reference to the contract, the claim is not subject to arbitration. See Fridl v. Cook, 908
S.W.2d 507, 511 (Tex. App.--El Paso 1995, writ dism'd w.o.j.).

D. Analysis


 Nestle and the Cettos contend the trial court is improperly exercising subject matter
jurisdiction over issues which are within the exclusive jurisdiction of the arbitrator, and is
abusing its discretion by requiring an immediate trial on all claims, leaving the
determination of an arbitrable issue - whether Americana must dismiss its trade secret
infringement and tortious interference claims against Nestle - to the jury.

 Americana argues that:

the Arbitral Award directed the trial court to interpret and rule on the
indemnity agreement. The Arbitral Award directed Americana to dismiss
those claims against Nestle that could result in liability on the Cettos
pursuant to the Nestle-Cetto indemnity agreement. Because the Arbitrator
did not specify in the Arbitral Award which exact claims Americana was
required to dismiss, not which exact claims triggered the Cettos' [sic]
indemnity obligations, the Arbitrator essentially relinquished jurisdiction over
those issues and remanded them to the Trial Court for further determination.


 Judicial review of an arbitration award under the FAA is extraordinarily narrow. 
Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex., 915 F.2d 1017, 1020 (5th Cir. 1990). Courts
give strong deference to the arbitrator and are not free to correct the arbitration award. Int'l
Bank of Commerce - Brownsville v. Int'l Energy Dev. Corp., 981 S.W.2d 38, 43 (Tex.
App.-Corpus Christi 1998, pet. denied). Texas law also favors arbitration. Brazoria
County v. Knutson, 142 Tex. 172, 176 S.W.2d 740, 743 (1943). An arbitration award has
the same effect as the judgment of a court of last resort, and a trial judge reviewing the
award may not substitute his or her judgment for the arbitrator's merely because the judge
would have reached a different decision. Bailey & Williams v. Westfall, 727 S.W.2d 86, 90
(Tex. App.-Dallas 1987, writ ref'd n.r.e.). Every reasonable presumption must be indulged
to uphold the arbitrators' decision, and none is indulged against it. Id. An award will not
be set aside for a mere mistake of fact or law. Anzilotti v. Gene D. Liggin, Inc., 899 S.W.2d
264, 266 (Tex. App.-Houston [14th Dist.] 1995, no writ). 

 Respondent did not rule on the Cettos's second motion to compel arbitration to
address the Cettos's assertion that Americana had failed to withdraw its claims against
Nestle that could result in contractual indemnity from the Cettos. Instead, on April 22,
2002, respondent ruled that "the issue of whether the claims set out by Nestle in its Third
Party Petition against the Cettos are covered by the Indemnity Agreement involves
questions of fact that must be determined by a Jury and are therefore reserved for trial." 
Respondent then set the case for trial on June 3, 2002.

 An order to arbitrate should not be denied unless it can be said with positive
assurance that the arbitration clause is not susceptible of an interpretation that covers the
asserted dispute. United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574,
582-83 (1960); Metro. Life Ins. Co. v. Lindsay, 920 S.W.2d 720, 722 (Tex. App.-Houston
[1st Dist.] 1996, orig. proceeding). Any doubts concerning the scope of arbitrable issues
should be resolved in favor of arbitration. Moses H. Cone Mem. Hosp. v. Mercury Constr.
Co., 460 U.S. 1, 24 (1983); Prudential Secs., Inc., 909 S.W.2d at 899.

 By attempting to resolve ambiguity in the arbitral award with litigation, rather than
further arbitration, respondent abused her discretion by effectively substituting her own
judgment for that of the arbitrator. Furthermore, if these issues are litigated, the Cettos and
Nestle will be "deprived of the benefits of the arbitration clause . . . , and the purpose of
providing a rapid, inexpensive alternative to traditional litigation would be defeated." In re
MHI P'ship, 7 S.W.3d 918, 921 (Tex. App.-Houston [1st Dist.] 1999, orig. proceeding)
(citing Anglin, 842 S.W.2d at 272-73 (finding no adequate remedy at law when trial judge
denied arbitration under FAA)). 

 After reviewing the record, we conclude that the arbitral award is ambiguous and
lacks a clear resolution of the prior arbitrable issues. Thus, the award does not constitute
"a mutual, final, and definite award upon the subject matter submitted" within the meaning
of 9 U.S.C. § 10 (a)(4) (2002). (4)
 Accordingly, we hold there is sufficient evidence of the lack
of a "mutual, final, and definite award" to warrant a remand to the arbitrator to enable him
to clarify what he meant by his award that:


 Americana is barred from asserting those claims against Nestle which
could result in contractual indemnity from Cettos to Nestle pursuant
to the Purchase Order dated October 1998.

 Americana shall within thirty (30) days from the date of transmittal of
this Award to the Parties dismiss with prejudice in the 1999 Action
those claims asserted against Nestle which could result in contractual
indemnity from Cettos to Nestle pursuant to the Purchase Order. 
Americana is barred from refiling those claims in any other forum.



See Olympia & York Fla. Equity Corp. v. Gould, 776 F.2d 42, 45 (2d Cir. 1985) (citing
Americas Ins. Co. v. Seagull Compania Naviera, S.A., 774 F.2d 64, 67 (2d Cir. 1985) ("An
ambiguous award should be remanded to the arbitrators so that the court will know exactly
what is being asked to enforce.")).

 E. Conclusion


 Because respondent clearly abused her discretion in ordering that the parties'
disputes be resolved by litigation, and not by further arbitration, we conditionally grant
mandamus relief. Respondent is directed: (1) to vacate her April 22, 2002 order in cause
number C-2012-99-C and (2) to remand the case to the arbitrator for a clarification of his
intent in the arbitral award. We are confident that respondent will comply promptly. The
writ will issue only if that confidence proves misplaced.


 FEDERICO G. HINOJOSA

 Justice


Justice Castillo not participating.


Publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this the

25th day of July, 2002.
1. 9 U.S.C.S. § 2 (2002) (enforcement of agreements to arbitrate).
2. Paragraph IV of the settlement agreement provides:


IV.


Release


A. Release by Americana


 In consideration of the mutual promises and obligations contained herein,
Americana, on its own behalf and on behalf of its assigns, agents, beneficiaries and
successors in interest, hereby expressly agrees not to, now or hereafter, individually or
collectively, institute, maintain or assert, against Defendants, individually or collectively, or
any of their past, present, and future officers, directors, employees, general agents, agents,
sub-agents, brokers, representatives, attorneys, insurers, subsidiaries or affiliates, including
past, present, and future officers, directors, and employees of any such person or companies
(collectively "Americana's Releasees"), either directly or indirectly, on its own behalf or on
behalf of any other person or entity, and hereby forever releases and discharges
Americana's Releasees from, any and all of Americana's Claims, based on, connected with,
arising out of, or related in whole or in part to: (i) any or all of the acts, omissions, facts,
matters, transactions or occurrences that were directly or indirectly alleged, asserted,
described, set forth or referred to in the Settling Action, (ii) the solicitation, purchase, delivery,
supply, distribution, or sales, prior to the effective date of this Settlement Agreement, of any
products by Defendants, collectively or individually, (iii) all transactions, recommendations,
services, acts, representations, omissions, and occurrences whatsoever of Defendants and
Americana's Releasees, individually or collectively, up to and including the date of this
instrument, and/or (iv) any and all acts, omissions, facts, matters, transactions, occurrences
or representations relating to the Settlement Agreement (collectively "Americana's Released
Transactions").


 Americana's release covers, without limitation, any and all claims for attorney's fees,
costs, expenses or disbursements incurred by Americana or its counsel in connection with
or related in any manner to the Settling Action, the settlement of said action, and the
Settlement Agreement. This release shall be a fully binding and complete compromise and
settlement between Americana and Americana's Releasees, and their heirs, assigns, agents,
beneficiaries and successors in interest. Nothing in Americana's release, however, shall
preclude any action to enforce the terms of the Settlement Agreement.

 
3. Paragraph XIV of the settlement agreement provides: 


XIV.


Governing Law, Dispute Resolution, And Venue



 The Settlement Agreement shall be construed and interpreted in accordance
with the laws of the State of Texas, without reference to the conflicts of law rules of the
State of Texas. At the sole and exclusive election of Defendants, any enforcement
action, dispute, controversy or claim arising out of or related to the Settlement
Agreement or the Settling Action shall be submitted to arbitration administered by the
American Arbitration Association under its Commercial Arbitration Rules. Should
Defendants elect to proceed with arbitration, the parties agree (i) to faithfully observe this
arbitration agreement and the Commercial Arbitration Rules, (ii) to abide by and perform any
award rendered by the arbitrator(s), (iii) that a judgment of any court having jurisdiction, in the
United States or Mexico, may be entered on any award, and (iv) that the American Arbitration
Association Optional Rules for Emergency Measures of Protection shall apply to any
proceeding.


(Emphasis added).
4. 9 U.S.C.S. § 10 (2002) states in relevant part:



 In any of the following cases the United States court in and for the district wherein
the award was made may make an order vacating the award upon the application
of any party to the arbitration - 



* * * * *




 
 where the arbitrators exceeded their powers, or so imperfectly executed
them that a mutual, final, and definite award upon the subject matter
submitted was not made.