

NUMBER 13-14-00295-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

BOSTON FINANCIAL INSTITUTIONAL                    Appellants,
TAX CREDITS XII, A LIMITED PARTNERSHIP
AND SLP, INC.,

**v.**

PASEO PLAZA APARTMENTS, L.P.,
BROWNSVILLE HOUSING OPPORTUNITY
CORPORATION AND HOUSING AUTHORITY OF
THE CITY OF BROWNSVILLE,                          Appellees.

### On appeal from the 357th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justice Rodriguez, Garza and Longoria
### Memorandum Opinion by Justice Garza

In this interlocutory appeal, appellants Boston Financial Institutional Tax Credits

XII, a limited partnership, and SLP, Inc. (collectively "Boston") challenge the trial court's

order denying their motion to compel arbitration in a suit brought by appellees Paseo Plaza Apartments, L.P. ("Paseo"), Brownsville Housing Opportunity Corporation ("BHOC"), and the Housing Authority of the City of Brownsville ("HACB"). We affirm.

## I. BACKGROUND

Paseo is a limited partnership, with both appellants as limited partners and BHOC as general partner. On March 29, 1996, the parties to this appeal entered into a "Purchase Option and Right of First Refusal Agreement" (the "ROFR Agreement") regarding a multi-family low-income housing project (the "Property") located in Cameron County, Texas. In section 1 of the agreement, Paseo granted HACB the option "to purchase the real estate, fixtures, and personal property comprising the Property or associated with the physical operation thereof, located at the Property and owned by [Paseo] at the time of the purchase" for a period of twelve months.[1] Section 2 provided that, "[i]n the event that [Paseo] decides to sell the Property, [HACB] shall have a right of first refusal to purchase the Property" during the same twelve-month period, and that

> [p]rior to accepting any such bona fide offer to purchase the Property, [Paseo] shall notify [HACB], [BHOC], and [Boston] of such offer and deliver to each of them a copy thereof. [Paseo] shall not accept any such offer unless and until the Refusal Right has expired without exercise by [HACB] . . . .

The agreement set forth different formulae for calculating the purchase price depending on whether the Property is purchased pursuant to the option or pursuant to the right of

---

[1] The twelve-month option period was defined in the agreement as beginning at "the close of the Compliance Period as determined under Section 42(i)(l)" of the Internal Revenue Code. *See* 26 U.S.C.A. § 42(i)(1) (West, Westlaw through P.L. 113-185) ("The term 'compliance period' means, with respect to any building, the period of 15 taxable years beginning with the 1st taxable year of the credit period with respect thereto."); *see also id.* § 42(f)(1) ("For purposes of this section, the term 'credit period' means, with respect to any building, the period of 10 taxable years beginning with (A) the taxable year in which the building is placed in service, or (B) at the election of the taxpayer, the succeeding taxable year, but only if the building is a qualified low-income building as of the close of the 1st year of such period.")

first refusal.[2]

Section 7 of the ROFR Agreement, entitled "Determination of Price," stated in relevant part:

> Upon notice by [BHOC] or [HACB], as the case may be, of its intent to exercise the Option or the Refusal Right, [Paseo] and [BHOC] or [HACB] shall exercise best efforts in good faith to agree on the purchase price for the Property. Any such agreement shall be subject to the prior written consent of [Boston], which shall not be withheld as to any purchase price determined properly in accordance with the terms of this Agreement. If the parties fail to agree or [Boston] fail[s] to consent, then the purchase price shall be determined by arbitration in accordance with the provisions of Section 8 below.

Section 8 of the agreement, entitled "Arbitration," stated in relevant part:

> In the event that the purchase price for the Property is to be determined by arbitration, or in the event of any other dispute hereunder, each of [HACB], [BHOC], [Boston], and any other Partners of [Paseo] who are in disagreement on the amount of the purchase price shall exercise best efforts in good faith to agree on a single arbitrator to act hereunder. Such arbitrator shall conduct proceedings in the geographic area in which the Property is located, according to such procedures as the arbitrator shall designate, provided that they are fair and do not violate the Uniform Arbitration Act if and as adopted by the state in which the Property is located or any similar act that may apply. . . .

In 2006, Paseo transferred its fee simple interest in the Property to HACB via a special warranty deed, and HACB leased the Property back to Paseo for a seventy-five-

---

[2] Specifically, section 3 of the ROFR Agreement stated that, if the Property is purchased pursuant to the option, the purchase price is calculated as "the greater of":

> (a) An amount sufficient (i) to pay all debts, liabilities and obligations of [Paseo] upon its termination and liquidation as projected to occur immediately following the sale pursuant to the option, including, but not limited to, fees and debts to Partners of [Paseo] (or their Affiliates), and (ii) to distribute to the Partners cash proceeds sufficient to enable the Partners of [Paseo] to pay, on an after-tax basis after any taxes imposed on such distribution, the taxes projected to be imposed on the Partners of [Paseo] as a result of the sale pursuant to the Option; and

> (b) . . . The fair market value of the Property, appraised as low-income housing . . . , any such appraisal to be made by an Independent Appraiser.

On the other hand, if the Property is purchased pursuant to the right of first refusal, the purchase price is defined as "the amount described in Section 3(a) above."

3

year term.

More than seven years later, in October of 2013, a dispute arose between the parties when HACB sent a letter to Boston stating that HACB "ha[s] been advised by [Paseo] that [Paseo] has received a bona fide offer to purchase the Property" and that HACB "hereby exercises its Refusal Right as set forth in the ROFR Agreement." Boston replied in a letter to BHOC and HACB stating: "[Boston] hereby notif[ies] you that HACB is without authority to acquire the [Property] pursuant to the ROFR Agreement, and that any further attempts to sell the [Property] without the prior written consent of [Boston] shall constitute a material default of [HACB] under the [Paseo] Partnership Agreement."

Paseo, BHOC, and HACB then jointly filed the instant lawsuit against Boston on November 7, 2013, alleging breach of contract and fraud. Appellees' petition alleged that Boston "represented that they were only interested in obtaining tax credits and were not interested in the sale of the property at issue" and that it "made such representations with the intent that [Paseo, BHOC, and HACB] rely on said representations to enter into the transaction at issue." The petition alleged that this representation was false and fraudulent. It further alleged that Boston "represented to [Paseo, BHOC, and HACB] that at the end of the 15 year tax credit period, [HACB] would be able to acquire the property." The petition noted that "[i]n September 2013, [Paseo] received a bona fide third party offer to purchase the subject property that triggered HACB['s] right of first refusal," and asserted that:

> Rather than complying with their contractual obligations under the ROFR Agreement to allow HACB to exercise its right of first refusal, [Boston] ha[s] instead attempted to block the sale of the subject property. Specifically, [Boston] claim[s] that HACB is without authority to acquire the subject property pursuant to the ROFR Agreement, and also claim[s] that any further attempts to sell the subject property without the prior written consent

4

of [Boston] shall constitute a material default of [BHOC] under the [Paseo] partnership agreement.

Appellees requested a declaration that (1) "the ROFR Agreement is in effect," (2) "HACB can exercise its right of first refusal," and (3) "[Paseo] is in receipt of a bona fide third party offer that is of the kind required under the ROFR Agreement." The petition also requested actual and exemplary damages and attorney's fees.

In its answer, Boston denied that "all conditions precedent to Plaintiff's claims have performed or have occurred." Specifically, Boston argued that "any alleged right of first refusal is triggered only in the event [Paseo] decides to sell the property" and that "there is no third-party bona fide offer that could trigger any alleged right of first refusal." Boston also argued, among other things, that "there is no justiciable controversy" because "Plaintiff's alleged rights under the ROFR [Agreement] terminated in or about 2006 when [Paseo] sold and transferred its fee simple interest in the subject property." The answer also included the following paragraph 8:

> Pleading in the alternative, if the same be necessary, and without waiving any of their other defenses, Defendants dispute the purchase price for which Plaintiffs allege the Property may be purchased. Defendants state, again in the alternative, that if [HACB] is entitled to purchase the real property, fixtures and personal property as described in Section 1 of the ROFR, which is otherwise denied, then the purchase price must be calculated pursuant to the Grant of Option as set forth in Section 1 and the greater amount as set forth in Section 3 of the ROFR.

Boston then filed a motion to compel arbitration in which it argued that arbitration of appellees' claims is required under section 8 of the ROFR Agreement. Appellees filed a response, and Boston filed a reply in which it argued that arbitration was also required by section 7 of the ROFR Agreement. After supplemental briefing and a hearing, the trial

5

court denied the motion and this appeal followed.[3]

## II. DISCUSSION

### A.     Applicable Law and Standard of Review

A party seeking to compel arbitration must establish that (1) there is a valid arbitration agreement, and (2) the claims raised fall within that agreement's scope. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013).

Federal and Texas law strongly favor arbitration, and arbitration agreements that comport with traditional principles of contract law will be upheld. *Forest Oil Corp. v. McAllen,* 268 S.W.3d 51, 56 (Tex. 2008); *see In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 893 (Tex. 2010) (orig. proceeding) (noting that "arbitration is intended as a lower cost, efficient alternative to litigation"). In construing an arbitration agreement, as with any contract, "the primary concern is to ascertain the true intentions of the parties as expressed in the agreement." *In re C&H News Co.*, 133 S.W.3d 642, 645 (Tex. App.—Corpus Christi 2003, orig. proceeding) (citing *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983)). "In this context, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* Once the trial court concludes that an arbitration agreement

---

[3] The parties do not address whether the appeal arises under the Texas Arbitration Act ("TAA") or the Federal Arbitration Act ("FAA"). Insofar as our jurisdiction is concerned, the distinction is immaterial because interlocutory orders denying motions to compel arbitration are immediately appealable under both statutes. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West, Westlaw through 2013 3d C.S.) (authorizing appeals of interlocutory orders in matters subject to the FAA "under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16"); *CMH Homes v. Perez*, 340 S.W.3d 444, 448 (Tex. 2011) ("Under the TAA, a party could bring an interlocutory appeal of an order denying arbitration.") (citing TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1) (West, Westlaw through 2013 3d C.S.) ("A party may appeal . . . an order . . . denying an application to compel arbitration [under the TAA] . . . .")); *see also* 9 U.S.C.A. § 16(a)(1)(C) (West, Westlaw through P.L. 113-185) (stating that an appeal may be taken from, *inter alia*, an order denying an application to compel arbitration).

encompasses the claims made, and that the party opposing arbitration has failed to prove any defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding).

Because state and federal policies favor arbitration, courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Id.*; *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 443 S.W.3d 196, 202 (Tex. App.—Corpus Christi 2013, pet. denied). "The policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (orig. proceeding); *Lopez*, 443 S.W.3d at 202.

When the facts relevant to the arbitration issue are not disputed, as here, we are presented only with issues of law and we review the trial court's order de novo. *Lopez*, 443 S.W.3d at 201; *see Rachal*, 403 S.W.3d at 843 ("When reviewing a denial of a motion to compel arbitration, we defer to the trial court's factual determinations that are supported by evidence but review the trial court's legal determinations de novo.").

**B.    Analysis**

The question presented is whether the claims raised in the underlying suit fall within the scope of the arbitration clause contained in the ROFR Agreement.

Boston first contends that arbitration was required under section 8 of the agreement. As noted, section 8 states in part that "[i]n the event that the purchase price for the Property is to be determined by arbitration, or in the event of any other dispute

7

hereunder, each of [HACB], [BHOC], [Boston], and any other Partners of [Paseo] who are in disagreement on the amount of the purchase price shall exercise best efforts in good faith to agree on a single arbitrator to act hereunder." Boston contends that the language "or in the event of any other dispute hereunder" constitutes an enforceable agreement by the parties to arbitrate any "dispute hereunder"—that is, any dispute that arises under the ROFR Agreement.

We disagree. Even though arbitration is favored by policy, agreements to arbitrate must be clear if they are to be enforceable. *Lopez*, 443 S.W.3d at 201; *see VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 827 (Tex. App.—Dallas 2013, no pet.); *Bates v. MTH Homes-Tex., L.P.*, 177 S.W.3d 419, 422 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Hearthshire Braeswood Plaza L.P. v. Bill Kelly Co.*, 849 S.W.3d 380, 391 (Tex. App.—Houston [14th Dist.] 1993, writ denied) ("The parties must have specifically agreed by clear language to arbitrate the matters in dispute."); *Valero Energy Corp. v. Wagner & Brown, II*, 777 S.W.2d 564, 566 (Tex. App.—El Paso 1989, writ denied) (same). Section 8 of the ROFR Agreement does not explicitly or clearly provide that the parties agreed to submit any particular type of claims to arbitration; it merely provides a procedure for the selection of an arbitrator, a forum for the proceedings, and a set of rules to be used therein should an arbitrable dispute arise.

Boston contends that such an interpretation renders meaningless the "in the event of any other dispute hereunder" language in section 8. *See In re C&H News Co.*, 133 S.W.3d at 645 (noting that courts construe contracts such that no provisions are rendered meaningless). Again, we disagree. The only explicit arbitration agreement in the ROFR Agreement appears in section 7, which defines its scope as covering two types of

8

disputes: (1) "If the parties fail to agree [on the purchase price]," or (2) if "[Boston] fail[s] to consent."[4] Section 8 then outlines specific procedures for arbitration "[i]n the event that the purchase price for the Property is to be determined by arbitration, or in the event of any other dispute hereunder." Viewed in this manner, the "in the event of any other dispute hereunder" language in section 8 would be construed as referring to the hypothetical situation, explicitly contemplated in section 7, under which "[Boston] fail[s] to consent" to the purchase price, which was to have been previously agreed to by the other parties under section 7. Moreover, the sentence at issue in section 8 explicitly directs "each of [HACB], [BHOC], [Boston], and any other Partners of [Paseo] who are in disagreement on the amount of the purchase price" to attempt to select an arbitrator. This strongly indicates that the parties intended to arbitrate only those disputes specifically mentioned in section 7—i.e., those regarding the purchase price or Boston's failure to consent thereto. We have "positive assurance" that section 8 "is not susceptible of an interpretation which would cover the dispute at issue." *Prudential*, 909 S.W.2d at 899. Therefore, the trial court did not err in denying the motion to compel arbitration on this basis.

---

[4] Boston sets forth the following argument in its initial brief:

Generally, if the facts alleged "touch matters," have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract that is subject to the arbitration agreement, the claim will be arbitrable. *Service Corp. Int'l* [*v. Lopez*], 162 S.W.3d [801, ]810 [(Tex. App.—Corpus Christi 2005, no pet.)] (citing *Jack B. Anglin Co.*, 842 S.W.2d at 271); *In re Valle Redondo, S.A.*, 47 S.W.3d 655, 662 (Tex. App.—Corpus Christi 2001, orig. proceeding); *In re Profanchik*, 31 S.W.3d 381, 385 (Tex. App.—Corpus Christi 2000, orig. proceeding).

The cases cited, however, each involved a broad arbitration clause encompassing all disputes related to the parties' transactions. *See Service Corp. Int'l*, 162 S.W.3d at 811 (clause applied to "any claim you may have against the seller"); *In re Valle Redondo,* 47 S.W.3d at 660 (clause applied to "any enforcement action, dispute, controversy or claim arising out of or related to the Settlement Agreement or the Settling Action"); *In re Profanchik*, 31 S.W.3d at 384 (clause applied to "any dispute arising between [the parties] with regard to this Agreement"). That is not so here. Therefore, these cases are inapposite to our analysis.

Boston next argues that arbitration is required under section 7 of the agreement, which, as noted, provides that "[i]f the parties fail to agree or [Boston] fail[s] to consent, then the purchase price shall be determined by arbitration . . . ." In particular, Boston points to paragraph 8 of its answer, in which it states that "Defendants dispute the purchase price for which Plaintiffs allege the property may be purchased" and "if [HACB] is entitled to purchase the [Property], which is otherwise denied, then the purchase price must be calculated pursuant to the Grant of Option as set forth in Section 1 and the greater amount as set forth in Section 3 of the ROFR [Agreement]." But appellees' petition did not dispute the purchase price of the Property, nor did it complain that Boston failed to consent thereto; rather, it sought to establish that the ROFR Agreement was enforceable despite the fact that the Property had already been transferred. Boston itself has made no affirmative claim for relief; and Boston has cited no authority, nor do we find any, establishing that a defendant may transform a plaintiff's theretofore-unarbitrable claims into arbitrable claims merely by making certain allegations in its defensive pleadings. Further, the arbitration clause in section 7 explicitly limited its scope to situations in which "the parties fail to agree or [Boston] fail[s] to consent" to the purchase price. Boston has not produced evidence that either of those two events occurred; instead, it notes that the purchase price must be determined under the terms of the agreement if HACB is permitted to exercise its right of first refusal.[5] That is true, but it

_____

[5] Boston argues that the October 2013 letters between the parties, which were admitted as evidence at the hearing, constitute "evidence that the parties' dispute includes whether conditions precedent were not satisfied because the Partnership never decided to sell pursuant to paragraph 2 of the Agreement . . . and Boston Financial did not consent to any such sale under section 6.1(B)(vii) under the Partnership Agreement." Even if that is true, such evidence still does not show that claims in the underlying suit involve "the parties['] fail[ure] to agree or [Boston's] fail[ure] to consent" to the purchase price, which are the only types of claims listed as arbitrable under section 7.

does not establish that the purchase price was at issue in the underlying proceedings. For the foregoing reasons, we find that the claims raised in the underlying suit do not fall within the scope of the narrow arbitration clause contained in section 7 of the ROFR Agreement.

## III. CONCLUSION

Having found that arbitration was not required under either sections 7 or 8 of the ROFR Agreement, we conclude that the trial court did not err in denying Boston's motion to compel arbitration. The trial court's judgment is affirmed.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
29th day of January, 2015.