**Opinion filed April 15, 2011**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00017-CV

_____

## RAWHIDE MESA-PARTNERS, LTD., Appellant

## V.

## BROWN McCARROLL, L.L.P. AND LYNN BUTLER, Appellees

**On Appeal from the 419th District Court**

**Travis County, Texas**

**Trial Court Cause No. D-1-GN-08-001712**

### O P I N I O N

This is a fraud claim arising out of a commercial real estate lease. Rawhide Mesa-Partners, Ltd. sued Brown McCarroll, L.L.P., Kell Mercer[1], and Lynn Butler alleging negligence, gross negligence, breach of fiduciary duty, and violations of the Texas Deceptive Trade Practices

_____

[1]Rawhide subsequently filed in this court a motion to dismiss its appeal as to Mercer only. We granted that motion and dismissed the appeal as to Mercer on July 1, 2010.

Act[2].  The defendants filed a combination traditional and no-evidence motion for summary judgment.  The trial court granted their motion and entered a take-nothing judgment.  We affirm.

## I. *Background Facts*

Rawhide owns a shopping center in Austin, Texas.  Robert Stern is a partner of Rawhide and handles negotiations with potential tenants.  Cynthia Prieser owns CR Bagels.  It was having difficulty with its landlord and Prieser hired Brown McCarroll to represent CR Bagels.  Butler tried to negotiate a work-out with the landlord but when it became apparent that this was impossible, Prieser approached Stern to lease space in Rawhide's shopping center.  Prieser asked Brown McCarroll to assist with the Rawhide negotiations.  Brown McCarroll had never represented Rawhide, but Nikelle Meade, an attorney with Brown McCarroll, had represented Stern on a personal matter.  Meade contacted Stern by email to clear the representation.  They exchanged the following emails:

> March 3, 2006 Meade to Stern:
> I am writing to inquire about a potential tenant of yours, CR Bagels.  One of the lawyers in our firm has been approached by them to represent them in the negotiation of their lease with you.  Since you are a previous client of the firm, we need your clearance for the firm to represent CR Bagels in this matter.  Do you have any objection to our representation of them in this matter?  Brad Stein will be the lawyer representing them?
>
> March 4, 2006 Stern to Meade:
> I assume you are speaking of Cynthia Prieser of Big Apple Bagels.  I have no objection to your representation of her and am happy that she has hired a good lawyer to represent her.  Please have Brad send me comments and copy our lawyer Kevin Childs as well. …
>
> Please advise Brad that I want to be sure Cynthia is totally on board with the business terms and I receive her financial information and get her deal approved before either one of us spend money on lawyers negotiating the lease.
>
> Also, while I am a small owner 1.8%, and have input, I do not make the final decisions.  This partnership has just concluded a 2½ year costly litigation with a prior tenant that made frivolous claims similar to ones I have heard Cynthia is making with respect to her current location and its problems (I'm not saying her claims are inaccurate I know nothing about that deal).  We were the prevailing party and are now collecting on a judgment that included legal fees in excess of 100K.

---

[2] *See* TEX. BUS. & COM. CODE ANN. §§ 17.41-.63 (Vernon 2011).

What I'm trying to say is, that while we want Cynthia as a tenant and I personally feel she will be successful, the General Partner in California has indicated he will not have much appetite to deviate from his lease that obviously incorporates some clauses to protect us from future litigation.

Since I have worked with you before and respect everyone's time, and money spent on legal fees, I feel it's important that you know this up front.

March 6, 2006 Meade to Stern:
Rob, you are correct that our client in the matter will be Cynthia and Big Apple Bagels. Thank you for this background information. It is helpful to know where the parties are coming from. Brad will let Cynthia know your desire about having her on board with the terms and financials before much legal work is done. We will also be sure to copy both you and Kevin on correspondence. Hopefully, we can make this a smooth and quick transaction.

Brown McCarroll filed a petition for bankruptcy on behalf of CR Bagels on March 8, 2006. Rawhide was unaware of this filing. The lease negotiations continued and CR Bagels and Rawhide entered into a lease on April 11. On June 29, Brown McCarroll filed a motion in bankruptcy court to assume the Rawhide Lease. Rawhide was not given notice of this motion.

CR Bagels defaulted on the lease in September. Butler represented CR Bagels in the subsequent conversations with Rawhide. In November, Rawhide locked CR Bagels out for nonpayment of rent. Butler advised Rawhide that the lock-out violated the automatic stay. This was Rawhide's first notice of CR Bagels' bankruptcy proceeding. Rawhide then hired bankruptcy counsel and removed CR Bagels from the shopping center.

## II. *Issues*

Rawhide challenges the trial court's judgment with four issues. Rawhide contends generally that the trial court erred by granting summary judgment and then, specifically, argues that the trial court erred by applying a privity requirement and the doctrine of judicial immunity to a fraud by nondisclosure claim, by holding that the lawyers did not have a duty of disclosure to a former client, and by finding that there was no fact question on its damages claim.

## III. *Discussion*

Rawhide's claim is based upon the premise that, had it known of CR Bagels' bankruptcy filing, it would not have executed the lease agreement and upon the argument that Butler or Brown McCarroll had a duty to disclose this fact. They respond that no such duty exists. Our initial inquiry, therefore, is whether a duty to disclose was triggered in this instance.

*A. Standard of Review.*

We review traditional motions for summary judgment with a well-settled, multifaceted standard of review. Questions of law are reviewed de novo. *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881 (Tex. App.—Austin 1999, pet. denied). To determine if a fact question exists, we consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546 (Tex. 1985).

We review a no-evidence summary judgment under the same standard as a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). We examine the record in the light most favorable to the nonmovant and credit evidence favorable to the nonmovant if reasonable jurors could, and disregard all contrary evidence and inferences unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

*B. Qualified Immunity.*

Rawhide recognizes that lawyers are generally immune from liability to the opposing party but argues that this immunity is limited and does not extend to actions that are foreign to the duties of an attorney. *See, e.g., Toles v. Toles*, 113 S.W.3d 899, 911 (Tex. App.—Dallas 2003, no pet.). For example, Texas courts have consistently held that lawyers are liable for fraudulent or criminal activity.[3] Rawhide does not contend that the lawyers made an affirmative misrepresentation but, instead, contends that they fraudulently withheld CR Bagels' financial information. To establish fraud by nondisclosure, a claimant must establish:

> 1. The defendant concealed or failed to disclose a material fact within its knowledge;
>
> 2. When it had a duty to disclose the fact;
>
> 3. The defendant intended to induce the claimant to take some action by concealing or failing to disclose the fact; and

---

[3]*See, e.g., Toles*, 113 S.W.3d at 911 (a lawyer is not shielded from liability when it participates in fraudulent activities); *IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 470 (Tex. App.—Amarillo 2001, pet. denied) (a lawyer's immunity extends only to actions that are within the bounds of the law); *McKnight v. Riddle & Brown, P.C.*, 877 S.W.2d 59, 61 (Tex. App.—Tyler 1994, writ denied) (lawyers are liable for fraudulent activities).

4

4. The claimant suffered damages because it acted without knowledge of the undisputed fact.

*Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). Whether a duty to speak exists is a question of law. *Id.*

Rawhide asserts three reasons why Butler and Brown McCarroll (collectively the lawyers) had a duty to disclose CR Bagels' bankruptcy filing:

1. There was a fiduciary duty between the lawyers and Stern;

2. The lawyers made partial and ambiguous statements that created a false impression of CR Bagels' ability to pay rent; and

3. The lawyers knew that Stern was ignorant of CR Bagels' bankruptcy filing and that he did not have an equal opportunity to discover the truth.

The trial court correctly found that these did not give rise to a duty of disclosure.

*1. Fiduciary Duty.*

Rawhide argues that there was a formal or informal fiduciary relationship between the lawyers and Stern and, therefore, that there was a fiduciary relationship between the lawyers and Stern's partnership, Rawhide. The attorney-client relationship gives rise to a fiduciary duty as a matter of law. *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999). Stern testified that he had had an attorney-client relationship with Brown McCarroll since May 2005, that he developed a close confidential relationship with the firm and came to rely upon their advice and counsel, and that he trusted the firm to look out for his business interests in his dealings with them. This relationship apparently grew out of one representation. When Stern was asked about Rawhide's prior relationship with Brown McCarroll, he testified that he had worked with Meade on an unrelated real estate transaction in 2005, that she represented him personally, and that she was not representing him in 2006. Stern did not describe any other engagement, and none is otherwise mentioned in the record.

Even if we assume that this single representation provided sufficient basis for Stern's continued confidence in the firm and its members, it is undisputed that Meade represented him personally in 2005. A fiduciary duty to Stern does not automatically inure to Rawhide's benefit. A partnership is a legal entity separate from its partners. *ISO Production Mgmt. 1982, Ltd. v. M & L Oil and Gas Exploration, Inc.*, 768 S.W.2d 354, 355 (Tex. App.—Waco 1989, no pet); *cf.*

5

*Gamboa v. Shaw*, 956 S.W.2d 662 (Tex. App.—San Antonio 1997, no writ) (lawyer rendering legal services to a corporation does not have a duty to the corporation's shareholders).

A fiduciary duty is the highest duty recognized by law. Accordingly, it is not lightly created. The lawyers had no prior attorney-client relationship with Rawhide. And they were in an adversarial posture with Rawhide in the lease negotiations – not only were they representing a third party, but Rawhide had its own attorney. Consequently, no formal fiduciary relationship existed. *See Patrick v. Howard*, 904 S.W.2d 941, 945 (Tex. App.—Austin 1995, no writ) (noting that the adversarial relationship between the parties was the antithesis of a confidential relationship); s*ee also Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997) (fact that one party relied upon the other to obtain the best price for its interest did not transfer an arm's-length transaction into a fiduciary relationship).

Texas courts have also recognized that an informal relationship can give rise to a fiduciary duty. This can arise from a moral, social, domestic, or purely personal relationship of trust and confidence. *Lundy v. Masson*, 260 S.W.3d 482, 502 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). But, the mere fact that one party subjectively trusts another does not, alone, indicate that confidence is placed in another in the sense demanded by fiduciary relationships because something apart from the transaction between the parties is required. *Kline v. O'Quinn*, 874 S.W.2d 776, 786 (Tex. App.—Houston [14th Dist.] 1994, writ denied). A confidential relationship exists when one party is, in fact, accustomed to being guided by the judgment or advice of the other, or is justified in the belief that such party will act in its interest. *Thames v. Johnson*, 614 S.W.2d 612, 614 (Tex. Civ. App.—Texarkana 1981, no writ). The only evidence of a confidential relationship was Stern's testimony that he trusted the firm. This is no evidence that a confidential relationship existed between the lawyers and Rawhide. The trial court, therefore, did not err by finding that there was no fiduciary duty between the lawyers and Rawhide.

### 2. *False Impression.*

Rawhide next argues that the lawyers led it to believe that CR Bagels was able to pay its rent. Rawhide reasons that the lawyers knew it wanted a tenant who could make rent payments and knew that CR Bagels had filed for bankruptcy. Because the lawyers did not disclose the bankruptcy, they effectively represented that CR Bagels could make its monthly rent payments.

Rawhide relies upon cases such as *Citizens National Bank v. Allen Rae Investments, Inc.*, 142 S.W.3d 459 (Tex. App.—Fort Worth 2004, no pet.), to argue that a duty to disclose arose. In that case, the plaintiffs were attempting to secure financing to build and operate a Motel 6. A bank business development officer told them that the bank could not finance their project because it needed a larger down payment than they wanted to make, but he then suggested that they consider building a Bed & Bath Inn. *Id.* at 468. The officer made this recommendation even though he had recently attended a Bed & Bath presentation and had doubts about its viability. *Id.* The court held that, when the bank officer pitched Bed & Bath to the plaintiffs, he had a duty to fully disclose what he knew about its financial condition. *Id.* at 477.

Here, there is no evidence that the lawyers made any representation about CR Bagels' financial condition or that Stern ever asked them for any financial information. Stern told Meade: "Please advise Brad that I want to be sure Cynthia is totally on board with the business terms and I receive her financial information and get her deal approved before either one of us spend money on lawyers negotiating the lease." The record does not indicate what financial representations Prieser made or if the lawyers were aware of those representations. Because there was no evidence that the lawyers made a financial representation or were aware of a misrepresentation by Prieser, there was no duty to disclose the bankruptcy filing.

Moreover, we note that if a lawyer's representation of a client in a business transaction constitutes a representation that the client is financially capable of performing its contractual obligations, the lawyer becomes a surety. In that instance, it would become difficult, if not impossible, for clients facing economic difficulty to secure legal representation. It would also place the lawyer in the impossible situation of representing two opposing sides in a business transaction. *See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("If an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest."). Not only would this place an unacceptable burden on the lawyer, it would denigrate the quality of legal representation any client with less than a perfect financial statement could receive. *See Gamboa*, 956 S.W.2d at 665 (explaining the need for privity between attorney and legal malpractice claimant).

*3. Stern's Knowledge.*

Finally, Rawhide argues that the lawyers knew it was ignorant of CR Bagels' bankruptcy filing. First, we note that the filing was a matter of public record, thus this is not information that Rawhide could have learned only from the lawyers.[4] Next, as noted above, Stern wanted to reach a deal with Prieser before using lawyers. Because there is no evidence that the lawyers knew what financial representations Prieser had made, Rawhide's position would necessarily require that they contact Stern and confirm his knowledge before beginning negotiation of the lease. This would create a conflict of interest for the lawyers. The trial court did not err by finding that the lawyers had no duty to advise Rawhide of the bankruptcy filing.

Because the lawyers had no duty to Rawhide, the trial court correctly granted their motion for summary judgment. Rawhide's Issues One, Two, and Three are overruled. This holding makes it unnecessary to address Rawhide's fourth issue.

IV. *Conclusion*

The judgment of the trial court is affirmed.

RICK STRANGE

JUSTICE

April 15, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

---

[4]We need not decide if Rawhide was charged with constructive notice of CR Bagels' bankruptcy filing. *See Shell Oil Co. v. Ross*, No. 01-08-00713-CV, 2010 WL 670549 at *14 (Tex. App.—Houston [1st Dist.] 2010, pet. filed) (discussing when public records establish constructive notice).