

NUMBER 13-11-00757-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

ROYSTON, RAYZOR, VICKERY
& WILLIAMS, L.L.P.,                                          Appellant,

v.

FRANCISCO "FRANK" LOPEZ,                                     Appellee.

On appeal from the 148th District Court
of Nueces County, Texas.

NUMBER 13-12-00023-CV

IN RE ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP

On Petition for Writ of Mandamus.

# O P I N I O N

Before Chief Justice Valdez and Justices Benavides and Perkes
Opinion by Justice Benavides

Royston, Rayzor, Vickery, & Williams, LLP ("Royston"), seeks to set aside an order denying its motion to compel arbitration by appeal in appellate cause number 13-11-00757-CV and by petition for writ of mandamus in appellate cause number 13-12-00023-CV. We affirm the order of the trial court in the appeal and we deny the petition for writ of mandamus.

## I. BACKGROUND

Francisco "Frank" Lopez retained Royston to represent him regarding a common law marriage and divorce and to pursue claims against Lopez's alleged common law wife after she won $11 million playing the lottery. The "Employment Contract" between Lopez and Royston gave Royston a twenty percent contingency fee in any gross recovery before expenses, provided that Lopez was responsible for all costs and expenses regardless of outcome, and gave Royston the right to withdraw as counsel at any time for any reason. The agreement contained the following arbitration provision:

> While we would hope that no dispute would ever arise out of our representation or this Employment Contract, you and the firm agree that any disputes arising out of or connected with this agreement (including, but not limited to the services performed by any attorney under this agreement) shall be submitted to binding arbitration in Nueces County, Texas, in accordance with appropriate statutes of the State of Texas and the Commercial Arbitration Rules of the American Arbitration Association (except, however, that this does not apply to any claims made by the firm for the recovery of its fees and expenses).

Royston filed suit on behalf of Lopez against his common-law wife; however, the suit was settled after court-ordered mediation. Lopez thereafter brought suit against Royston for malpractice, gross negligence, fraud, breach of contract, and negligent misrepresentation. Lopez asserted that Royston "provided alcoholic beverages" to him at the mediation, told him the settlement was in his best interests, and encouraged him

2

to take a "meager" settlement, even though there was ample evidence that the parties had a common law marriage and an electronic message from Lopez's ex-wife showed that she had agreed "to a much larger settlement amount." Lopez asserted Royston "failed to zealously assert and prove" that he had damage claims that entitled him to either fifty percent of the lottery winnings as community property due to the then-existing common law marriage, or in the alternative, the "$3,200,000.00 he was entitled to pursuant to the text message from his ex-wife."

Royston moved to compel arbitration under the Texas Arbitration Act ("TAA") and, by supplemental motion, for arbitration under the common law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.001–.098 (West 2011). Lopez responded to the motion to compel and supplemental motion raising numerous affirmative defenses to arbitration. After a hearing where the trial court considered the motions to compel and the responses thereto, which were supported only by the Employment Contract, the trial court denied Royston's motion to compel arbitration.

This appeal and original proceeding ensued. By orders previously issued in these cases, the Court consolidated these two matters and ordered the underlying litigation to be stayed pending further order of this Court, or until the cases are finally decided. *See* TEX. R. APP. P. 29.5(b), 52.10(b). The matter has been fully briefed by both parties, and the matter has been submitted to the Court at oral argument.

By five issues, which we have summarized and restated, Royston contends that: (1) the trial court abused its discretion in denying the motion to compel arbitration; (2) a legal malpractice claim should not be considered to be a personal injury claim, and

3

therefore subject to statutory requirements for arbitration agreements under the TAA;[1] (3) the trial court abused its discretion in denying arbitration if its decision was based on an advisory ethics opinion requiring that lawyers provide clients with information relative to litigation and arbitration before entering an arbitration agreement; (4) the arbitration agreement was not illusory; and (5) the arbitration agreement was not unconscionable.

## II. MANDAMUS

Mandamus is an "extraordinary" remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding); *see In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding). To obtain mandamus relief, the relator must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *see In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). To satisfy the clear abuse of discretion standard, the relator must show that the trial court could "reasonably have reached only

---

[1] There is a split of authority among the Texas courts of appeals regarding whether legal malpractice claims constitute personal injury claims for purposes of section 171.002. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.002 (West 2011) (excluding claims for personal injury from arbitration under the TAA unless each party to the claim, on the advice of counsel, agrees in writing to arbitrate and the agreement is signed by each party and each party's attorney). Several courts have held that legal malpractice claims do not constitute personal injury claims for purposes of section 171.002. *See Chambers v. O'Quinn*, 305 S.W.3d 141, 148 (Tex. App.—Houston [1st Dist.] 2009, pet. denied.); *Taylor v. Wilson*, 180 S.W.3d 627, 630–31 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Miller v. Brewer*, 118 S.W.3d 896, 899 (Tex. App.—Amarillo 2003, no pet.); *In re Hartigan*, 107 S.W.3d 684, 690–91 (Tex. App.—San Antonio 2003, pet. denied). This Court has held to the contrary. *In re Godt*, 28 S.W.3d 732, 738–39 (Tex. App.—Corpus Christi 2000, no pet.). Our analysis of the instant case is governed by other issues, and accordingly, we need not address this matter herein. *See* TEX. R. APP. P. 47.1, 47.4.

one decision." *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (quoting *Walker*, 827 S.W.2d at 840).

Arbitration clauses may be enforced under Texas common law. *In re Swift Transp. Co.*, 311 S.W.3d 484, 491 (Tex. App.—El Paso 2009, orig. proceeding); *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 599 (Tex. App.—Texarkana 2008, orig. proceeding); *see L.H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 351–52 (Tex. 1977) (common law arbitration and statutory arbitration are "cumulative" and part of a "dual system"); *Carpenter v. N. River Ins. Co.*, 436 S.W.2d 549, 553 (Tex. Civ. App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.) ("In the many other states having arbitration statutes similar to our 1965 statute, it is almost uniformly held that the statutory remedy is cumulative and that the common law remedy remains available to those who choose to use it."). Mandamus is the appropriate procedure by which we may review the trial court's ruling on a motion to compel arbitration under the common law. *See In re Swift Transp. Co.*, 311 S.W.3d at 491; *In re Paris Packaging*, 136 S.W.3d 723, 727 & n.7 (Tex. App.—Texarkana 2004, orig. proceeding).

### III. APPEAL

Under the TAA, a party may appeal an interlocutory order that denies an application to compel arbitration made under Section 171.021. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1) (West 2011). When reviewing an order denying arbitration under the TAA, we apply a de novo standard to legal determinations and a no evidence standard to factual determinations. *PER Group, L.P. v. Dava Oncology, L.P.*, 294 S.W.3d 378, 384 (Tex. App.—Dallas 2009, no pet.); *Trammell v. Galaxy Ranch Sch., L.P. (In re Trammell)*, 246 S.W.3d 815, 820 (Tex. App.—Dallas 2008, no

pet.); *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 791 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). In reviewing the trial court's factual determinations, we must credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *PER Group, L.P.*, 294 S.W.3d at 384; *Trammell*, 246 S.W.3d at 820 (citing *Kroger Tex. Ltd. v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005)); *TMI, Inc.*, 225 S.W.3d at 791. However, when the facts relevant to the arbitration issue are not disputed, we are presented only with issues of law and we review the trial court's order de novo. *PER Group, L.P.*, 294 S.W.3d at 384; *Trammell*, 246 S.W.3d at 820.

A party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *TMI, Inc.*, 225 S.W.3d at 791; *Cappadonna Elec. Mgmt. v. Cameron County*, 180 S.W.3d 364, 370 (Tex. App.—Corpus Christi 2005, orig. proceeding). A court may not order arbitration in the absence of such an agreement. *Cappadonna*, 180 S.W.3d at 370 (citing *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994)). The parties' agreement to arbitrate must be clear. *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 835 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (combined appeal & orig. proceeding). If the party opposing arbitration denies the existence of an agreement to arbitrate, that issue is determined summarily by the court as a matter of law. TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(b); *J.M. Davidson, Inc.*, 128 S.W.3d at 227. If the movant establishes that an arbitration agreement governs the dispute, the burden then shifts to the party opposing arbitration to establish

6

a defense to the arbitration agreement. *McReynolds v. Elston*, 222 S.W.3d 731, 739 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Courts may not order parties to arbitrate unless they have agreed to do so. *See Freis*, 877 S.W.2d at 284 ("While courts may enforce agreements to arbitrate disputes, arbitration cannot be ordered in the absence of such an agreement."); *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 356–57 (Tex. App.— Houston [1st Dist.] 1995, no writ) (combined appeal & orig. proceeding). Therefore, despite strong presumptions that favor arbitration, a valid agreement to arbitrate is a settled, threshold requirement to obtaining relief. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737–38 (Tex. 2005) (orig. proceeding); *J.M. Davidson, Inc.*, 128 S.W.3d at 227.

Ordinary contract principles are applied to the determination of whether there is a valid agreement to arbitrate. *J.M. Davidson, Inc.*, 128 S.W.3d at 227; *see In re Bunzl U.S.A., Inc.*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, orig. proceeding). In determining the scope of the arbitration agreement, we focus on the petition's factual allegations rather than the legal causes of action asserted. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding) (decided under Federal Arbitration Act); *PER Group, L.P.*, 294 S.W.3d at 386 (decided under TAA). Courts resolve any doubts about an arbitration agreement's scope in favor of arbitration. *TMI, Inc.*, 225 S.W.3d at 791 (applying TAA). When parties agree to arbitrate and the agreement encompasses the claims asserted, the trial court must compel arbitration and stay litigation pending arbitration. *See* TEX. CIV. PRAC. & REM. CODE ANN. §

7

171.021(b); *Meyer v. WMCO GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006); *PER Group, L.P.*, 294 S.W.3d at 384.

Texas law embraces arbitration. The Texas Supreme Court has recognized arbitration as a potentially efficient, cost-effective, and speedy means of resolving disputes. *See In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 893 (Tex. 2010) (orig. proceeding) ("we also recognize that arbitration is intended as a lower cost, efficient alternative to litigation"); *In re Poly-America, L.P.*, 262 S.W.3d 337, 347 (Tex. 2008) (orig. proceeding) ("arbitration is intended to provide a lower-cost, expedited means to resolve disputes"); *Jack B. Anglin Co.*, 842 S.W.2d at 268 & n.3, 269 ("the main benefits of arbitration lie in expedited and less expensive disposition of a dispute").

## IV. ANALYSIS

Lopez does not dispute the existence of the Employment Contract or otherwise dispute that he signed the agreement. In reviewing the text of the agreement and considering that the parties signed it, we conclude that appellant has established an agreement to arbitrate. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737. We further conclude that the claims at issue in this lawsuit fall within the scope of the agreement. *See In re First Tex. Homes, Inc.*, 120 S.W.3d 868, 870 (Tex. 2003) (orig. proceeding) (per curiam) (examining the scope of an arbitration agreement that applied to "all disputes between [the parties] . . . arising out of this Agreement or other action performed . . . by [a party to the agreement]"); *see also Emerald Tex. Inc. v. Peel*, 920 S.W.2d 398, 403 (Tex. App.—Houston [1st Dist.] 1996, no writ) ("If . . . the [arbitration] clause is broad, arbitration should not be denied unless it can be said with positive assurance that the particular dispute is not covered."). The agreement requires

8

arbitration of "any disputes arising out of or connected with this agreement (including, but not limited to the services performed by any attorney under this agreement)," and this provision squarely encompasses the malpractice claims raised against Royston.

Having concluded that the arbitration agreement was valid and the claims at issue were within the scope of the arbitration agreement, we turn our consideration to appellee's defenses to the arbitration agreement. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227 (stating that if the trial court finds a valid agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration); *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding); *City of Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex. App.—Corpus Christi 1994, no writ). Lopez raised several affirmative defenses to arbitration. Specifically, Lopez asserts, inter alia, that the arbitration agreement is substantively unconscionable. We address this issue first because we conclude that it is determinative of this proceeding.

Arbitration agreements are not inherently unconscionable. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006) (orig. proceeding). "Unconscionable contracts, however, whether relating to arbitration or not, are unenforceable under Texas law." *In re Poly-America, L.P.*, 262 S.W.3d at 348–49. The TAA specifically acknowledges this defense and provides that a court may not enforce an arbitration agreement "if the court finds the agreement was unconscionable at the time the agreement was made." TEX. CIV. PRAC. & REM. CODE ANN. § 171.022 (West 2005); *see In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677; *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 860–61 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding).

9

According to the Texas Supreme Court, "[u]nconscionability is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one sided." *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677 (citing DAN B. DOBBS, 2 LAW OF REMEDIES 703, 706 (2d ed. 1993); RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. a (1979)). Unconscionability is not subject to precise doctrinal definition and is instead determined in light of a variety of factors. *In re Poly-America, L.P.*, 262 S.W.3d at 348–49. The determination regarding whether a contract or term is unconscionable is made in the light of its setting, purpose, and effect. *Id.* Relevant factors include weaknesses in the contracting process, fraud, and other invalidating causes, and the policy overlaps with rules which render particular bargains or terms unenforceable on grounds of public policy. *Palm Harbor Homes, Inc.*, 195 S.W.3d at 677 (citing RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. a (1979)). In considering an arbitration clause, allegations of unconscionability "must specifically relate to the [arbitration clause] itself, not the contract as a whole, if [unconscionability is] to defeat arbitration." *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756.

The party asserting unconscionability bears the burden of proof. *In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 376–77 (Tex. App.—Texarkana 1999, orig. proceeding). Whether a contract is contrary to public policy or unconscionable at the time it is formed is a question of law. *In re Poly America, L.P.*, 262 S.W.3d at 348–49; *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006). Because a trial court has no discretion to determine what the law is or apply the law incorrectly, its clear failure to properly analyze or apply the law of unconscionability constitutes an abuse of

10

discretion. *In re Poly-America, L.P.*, 262 S.W.3d at 349; *Walker*, 827 S.W.2d at 840; *In re Green Tree Servicing LLC*, 275 S.W.3d at 602–03.

Unconscionability may be either procedural or substantive in nature. *See In re Palm Harbor Homes, Inc.,* 195 S.W.3d at 678. Generally speaking, procedural unconscionability refers to the circumstances surrounding the adoption of the arbitration provision, and substantive unconscionability concerns the fairness of the arbitration provision itself. *Id.*; *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002) (orig. proceeding). More specifically, procedural unconscionability relates to the making or inducement of the contract, focusing on the facts surrounding the bargaining process. *TMI, Inc.*, 225 S.W.3d at 792; *see Labidi v. Sydow*, 287 S.W.3d 922, 927 (Tex. App.— Houston [14th Dist.] 2009, no pet.) (stating that the success or failure of an argument regarding procedural unconscionability is dependent upon the existence of facts which allegedly illustrate unconscionability). The test for substantive unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank*, 52 S.W.3d at 757; *see In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 678. The principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position, but are instead applied to prevent unfair surprise or oppression. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 679; *In re FirstMerit Bank*, 52 S.W.3d at 757.

As an initial matter, we note that Royston contends Lopez must show both procedural and substantive unconscionability, and, because he did not contend that the

11

agreement was procedurally unconscionable, his argument must fail. We disagree. The Texas Supreme Court has expressly held that "courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision." *In re Halliburton Co.*, 80 S.W.3d at 572. The two types of unconscionability are distinct. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756.

Agreements to arbitrate disputes between attorneys and clients are generally enforceable under Texas law; there is nothing per se unconscionable about an agreement to arbitrate such disputes and, in fact, Texas law has historically condoned agreements to resolve such disputes by arbitration. *Cf. In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (discussing arbitration agreements between employers and employees); s*ee, e.g., In re Pham (Pham v. Letney)*, 314 S.W.3d 520, 526 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (combined appeal & orig. proceeding); *Chambers v. O'Quinn*, 305 S.W.3d 141, 149 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Labidi*, 287 S.W.3d at 929; *In re Hartigan*, 107 S.W.3d 684, 692 (Tex. App.—San Antonio 2003, orig. proceeding); *Henry v. Gonzalez*, 18 S.W.3d 684, 688–89 (Tex. App.—San Antonio 2000, pet. dism'd); *Porter & Clements, L.L.P. v. Stone*, 935 S.W.2d 217, 219–22 (Tex. App.—Houston [1st Dist.] 1996, no writ). The Houston Courts of Appeals have issued several opinions regarding attorney-client arbitration agreements and have taken a strong position in favor of such agreements. *Pham*, 314 S.W.3d at 526; *Chambers*, 305 S.W.3d at 149; *Labidi,* 287 S.W.3d at 927–28. Under this line of opinions, a fiduciary relationship between attorney and client does not exist before the client signs the employment contract containing the arbitration agreement, and therefore

12

attorneys are not required to fully explain all implications of the arbitration clause. *See, .e.g., Pham*, 314 S.W.3d at 526.[2] Further, courts should defer to the Legislature with regard to the imposition of any conditions on arbitration provisions between attorney and client. *See id.* at 528; *Chambers*, 305 S.W.3d at 149. We note that cases upholding attorney-client arbitration proceedings have engendered passionate and articulate dissenting opinions:

> Notwithstanding the application of settled contract law and public policy favoring alternate dispute resolution, many respected jurists and lawyers oppose arbitration because it is not cost effective, disgorges unwary consumers of the right to a jury trial, and eliminates appellate review for errors of law. I remain a proponent of arbitration. However, when the legislature and rule-making authority in the legal profession fail to protect consumers of legal services, I believe the courts have an obligation to act because public perception of the legal profession's ability to self-police is not favorable.

*Pham*, 314 S.W.3d at 528–29 (Seymore, J., dissenting); *see also Henry*, 18 S.W.3d at 692 (Hardberger, C.J., dissenting).

In the instant case, Lopez contends that the arbitration agreement is unconscionable because it requires him to arbitrate all of his claims but allows Royston to litigate its claims regarding costs and expenses. The agreement provides that the parties are required to arbitrate "any disputes arising out of or connected with this

---

[2] These Texas cases stand in contrast to cases from other jurisdictions which reach the opposite conclusion regarding balancing public policies favoring arbitration and those policies which underlie the attorney-client relationship. *See, e.g., Hodges v. Reasonover*, 103 So.3d 1069, 1071 (La. 2012) ("[W]e hold there is no per se rule against arbitration clauses in attorney-client retainer agreements, provided the clause is fair and reasonable to the client. However, the attorneys' fiduciary obligation to the client encompasses ethical duties of loyalty and candor, which in turn require attorneys to fully disclose the scope and the terms of the arbitration clause. An attorney must clearly explain the precise types of disputes the arbitration clause is meant to cover and must set forth, in plain language, those legal rights the parties will give up by agreeing to arbitration. In this case, the defendants did not make the necessary disclosures, thus, the arbitration clause is unenforceable."); *Averill v. Cox*, 145 N.H. 328, 338 (N.H. 2000) (superseded by statute on other grounds) (holding that an attorney seeking to enforce an arbitration clause in a fee agreement entered into after the commencement of the attorney-client relationship has the burden of proving that it is fair and reasonable and that the client had full knowledge of the facts and of his legal rights with relation thereto).

13

agreement (including, but not limited to the services performed by any attorney under this agreement), except, however, that this does not apply to any claims made by the firm for the recovery of its fees and expenses." Royston concedes that "it is true that it is unlikely that Royston would ever have a claim against Lopez that was not a claim for fees."

The Texas Supreme Court has specifically addressed the concept of unconscionability where the terms of the arbitration agreement allow one party to litigate but force the other party to arbitrate:

> The de los Santoses also argue that the agreement's terms are unconscionable because they force the weaker party to arbitrate their claims, while permitting the stronger party to litigate their claims. They point us to decisions in other jurisdictions that have found this type of clause to be unconscionable. Most federal courts, however, have rejected similar challenges on the grounds that an arbitration clause does not require mutuality of obligation, so long as the underlying contract is supported by adequate consideration. In any event, the basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. The principle is one of preventing oppression and unfair surprise and not of disturbing allocation of risks because of superior bargaining power. Here, the Arbitration Addendum allows the bank to seek judicial relief to enforce its security agreement, recover the buyers' monetary loan obligation, and foreclose. Given the weight of federal precedent and the routine nature of mobile home financing agreements, we find that the Arbitration Addendum in this case, by excepting claims essentially protecting the bank's security interest, is not unconscionable. We also recognize that the plaintiffs are free to pursue their unconscionability defense in the arbitral forum.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d at 757 (internal citations and footnotes omitted).

*see also In re Poly-America, L.P.*, 262 S.W.3d at 348; *In re Halliburton Co.*, 80 S.W.3d at 571.

Applying the basic test for unconscionability to the instant case, and examining the relevant factors, we conclude that the specific agreement before the Court is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. Significantly, neither *In re FirstMerit Bank* nor *In re Poly-America* involved the construction of a one-sided arbitration clause in the context of the creation of an attorney-client relationship. We further note that none of the cases proffered by the parties regarding the enforceability of arbitration clauses in attorney-client contracts concerned a clause allowing the attorneys to litigate but prohibiting their clients from doing so. Given the relationship between attorney and client, the relative expertise of lawyers in understanding the differences between arbitration and litigation and the relative costs thereof as compared to their clients, we find, under the specific facts of this case, that the arbitration agreement, by specifically excepting claims protecting Royston's fees and costs, is unconscionable. The terms of the arbitration provision are very unusual and, on their face, distinctly favor Royston over its relatively unsophisticated client, Lopez. *See Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 865 (Tex. App.—Dallas 2010, no pet.). The arbitration agreement is not a "bilateral agreement to arbitrate" and is most definitely one-sided and oppressive. *See In re Poly-America*, 262 S.W.3d at 348–49; *Labidi*, 287 S.W.3d 922.

In reaching this conclusion, we note that Royston contends that the trial court abused its discretion in denying arbitration if its decision was based on an advisory ethics opinion requiring that lawyers provide clients with information relative to litigation and arbitration before entering an arbitration agreement. The opinion rendered by the

15

Texas Ethics Commission suggests that it would be permissible under the Texas Disciplinary Rules of Professional Conduct to include an arbitration clause in an attorney-client contract only if the client was made aware of the advantages and disadvantages of arbitration and had sufficient information to make an informed decision as to whether to include the clause:

> In order for the client's agreement for arbitration to be effective, the Committee believes that the client must receive sufficient information about the differences between litigation and arbitration to permit the client to make an informed decision about whether to agree to binding arbitration. While most of the duties flowing from the lawyer-client relationship attach only after the creation of the lawyer-client relationship, some duties may attach before a lawyer-client relationship is established. *See* paragraph 12 of the Preamble to the Texas Disciplinary Rules of Professional Conduct. Rule 1.03(b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The Committee is of the opinion that this Rule applies when a lawyer asks a prospective client to agree to binding arbitration in an engagement agreement. In order to meet the requirements of Rule 1.03(b), the lawyer should explain the significant advantages and disadvantages of binding arbitration to the extent the lawyer reasonably believes is necessary for an informed decision by the client. The scope of the explanation will depend on the sophistication, education and experience of the client. In the case of a highly sophisticated client such as a large business entity that frequently employs outside lawyers, no explanation at all may be necessary. In situations involving clients who are individuals or small businesses, the lawyer should normally advise the client of the following possible advantages and disadvantages of arbitration as compared to a judicial resolution of disputes: (1) the cost and time savings frequently found in arbitration, (2) the waiver of significant rights, such as the right to a jury trial, (3) the possible reduced level of discovery, (4) the relaxed application of the rules of evidence, and (5) the loss of the right to a judicial appeal because arbitration decisions can be challenged only on very limited grounds. The lawyer should also consider the desirability of advising the client of the following additional matters, which may be important to some clients: (1) the privacy of the arbitration process compared to a public trial; (2) the method for selecting arbitrators; and (3) the obligation, if any, of the client to pay some or all of the fees and costs of arbitration, if those expenses could be substantial. Although the disclosure should vary from client to client, depending on the particular circumstances, the overriding

concem is that the lawyer should provide information necessary for the client to make an informed decision.

. . . .

It is permissible under the Texas Disciplinary Rules of Professional Conduct to include in an engagement agreement with a client a provision, the terms of which would not be unfair to a typical client willing to agree to arbitration, requiring the binding arbitration of fee disputes and malpractice claims provided that (1) the client is aware of the significant advantages and disadvantages of arbitration and has sufficient information to permit the client to make an informed decision about whether to agree to the arbitration provision, and (2) the arbitration provision does not limit the lawyer's liability for malpractice.

*See* OP. TEX. ETHICS COMM'N No. 586 (2008). In the proceedings below, Lopez contended that this opinion supports the notion that for an arbitration clause in an attorney-client contract to be considered valid, an attorney must make sure that the client is fully informed regarding the clause's implications. However, as correctly noted by both the Ethics Commission and Royston, ethics opinions are concerned with matters of attorney discipline and are advisory rather than binding. *Id.* ("It is beyond the authority of this Committee to address questions of substantive law relating to the validity of arbitration clauses in agreements between lawyers and their clients."); *see Sidley Austin Brown & Wood, LLP*, 327 S.W.3d at 866; *Pham*, 314 S.W.3d at 527–28; *Labidi*, 287 S.W.3d at 929. Accordingly, the trial court would have abused its discretion if it found the arbitration provision was unconscionable on this basis alone. We nevertheless conclude that the preceding ethics opinion, the disciplinary rules, and the public policy considerations surrounding the attorney-client relationship are some of the factors that can be considered when determining whether or not a contract is unconscionable. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677; *see, e.g., Cruse v. O'Quinn*, 273 S.W.3d 766, 775 (Tex. App.—Houston 14th Dist. 2008, pet. denied) (stating that the disciplinary rules do not give rise to private causes of action;

17

however, a court may deem these rules to be an expression of public policy).  In this regard, we agree with the recent analysis of Texas Supreme Court authority on the attorney-client relationship as expressed by the Dallas Court of Appeals:

> When interpreting and enforcing an attorney-client agreement, the Texas Supreme Court has admonished us to be mindful of the ethical considerations overlaying the contractual relationship between an attorney and client. *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 560 (Tex. 2006).  An attorney has a special responsibility to maintain the highest standards of conduct and fair dealing when contracting with a client or otherwise taking a position adverse to the client's interests. *Id.* To place the burden of clarifying attorney-client agreements on the attorney is justified, not only by the attorney's greater knowledge and experience with respect to such agreements, but also by the trust the client has placed in the attorney. *Levine v. Bayne, Snell & Krause, Ltd.*, 40 S.W.3d 92, 95 (Tex. 2001).  According to the Restatement of the Law Governing Lawyers, contracts between an attorney and client should first be construed from the standpoint of a reasonable person in the client's circumstances. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 18 cmt. h.  The lawyer thus bears the burden of ensuring that the contract states any terms diverging from a reasonable client's expectations. *Id.*  Although much of the case law illustrating this construction principle addresses disputes over fee terms, the principle is applied to other terms as well. *Id.*

*Falk & Fish, L.L.P., v. Pinkston's Lawnmower & Equip., Inc.*, 317 S.W.3d 523, 528–29 (Tex. App.—Dallas 2010, no pet.); *see also Rawhide Mesa-Partners, Ltd. v. Brown McCarroll, L.L.P.*, 344 S.W.3d 56, 60 (Tex. App.—Eastland 2011, no pet.) ("A fiduciary duty is the highest duty recognized by law."); *Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 265 (Tex. App.—Corpus Christi 1991, writ denied) ("[T]he relationship between attorney and client has been described as one of *uberrima fides*, which means, 'most abundant good faith,' requiring absolute and perfect candor, openness and honesty, and the absence of any concealment or deception."); *Chien v. Chen*, 759 S.W.2d 484, 495 n. 6 (Tex. App.—Austin 1988, no writ) (observing that the attorney client relationship is a

18

fiduciary relationship where the law demands of one party an unusually high standard of ethical or moral conduct with reference to another).

## V. RESPONSE TO DISSENT

We have fully reviewed and carefully considered the dissenting opinion in this case. As an initial matter, we note that we do not disagree with the dissent as to the controlling law regarding unconscionability generally or its specific application in the context of attorney-client arbitration clauses. *See, e.g., In re FirstMerit Bank, N.A.*, 52 S.W.3d at 757. The dissent posits, however, that Lopez's arguments can be restated as "the fact that the arbitration agreement arose between a lawyer and prospective client makes the contract unconscionable at the outset." The dissent further contends that "a fiduciary relationship may arise prior to the creation of an attorney-client relationship," but Lopez failed to carry his burden to prove that the arbitration clause was unconscionable because he failed to present evidence regarding unconscionability and "evidence regarding the discussions or negotiations to show what occurred in this case." In short, the dissent misinterprets the majority opinion to hold that the agreement was unconscionable despite the lack of evidence to show or establish a fiduciary relationship between Lopez and Royston.

The dissent's interpretation of the majority opinion is incorrect. First, as noted previously, arbitration clauses in attorney-client employment contracts are not presumptively unconscionable. *See Pham*, 314 S.W.3d at 526 (rejecting the "notion that arbitration provisions in attorney-client contracts are inherently unconscionable without additional restrictions."). Second, and more fundamentally, the majority's opinion is not premised on a fiduciary relationship, if any, between a prospective client

19

and lawyer. *See, e.g., id.* at 526–27 (discussing the potential for a "special, fiduciary, or attorney-client relationship to arise prior to entering a formal agreement"). Rather, under the majority's analysis, the arbitration clause at issue in this case is so one-sided that it is unconscionable as a matter of law given the circumstances existing when the parties made the contract, that is, the inception of an attorney-client relationship, when the contract gave Royston the right to withdraw as counsel at any time for any reason, exclusively favored Royston with the right to litigate "any claims made by the firm for the recovery of its fees and expenses," compelled Lopez to arbitrate all of his disputes with Royston, including any malpractice claims, and provided that Lopez was responsible for all costs and expenses regardless of the outcome of the dispute for which Royston was retained. Third, Lopez had no evidentiary burden with respect to his contention that the arbitration agreement is substantively unconscionable as a matter of law. *See Hoover*, 206 S.W.3d at 562; *Sec. Serv. Fed. Credit Union v. Sanders*, 264 S.W.3d 292, 298 (Tex. App.—San Antonio 2008, no pet.).

Based on the foregoing, we respectfully disagree with the dissent's analysis of this case.

## VI. CONCLUSION

The Court, having examined and fully considered the matters in these causes, is of the opinion that the trial court's order denying Royston's motion to compel arbitration should be affirmed. Accordingly, we lift the stay that was previously imposed in these matters and we affirm the order of the trial court. Having affirmed the order in the appeal, we need not further address the identical issues raised by mandamus, and we

20

deny the requested relief in the original proceeding.   Any pending motions are dismissed as moot.

_____
GINA M. BENAVIDES,
Justice

Dissenting Opinion by
Justice Gregory T. Perkes.


Delivered and filed the
27th day of June, 2013.